**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0883n.06

No. 13-1054

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 10, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GEORGIA BROWN, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| VHS OF MICHIGAN, INC., | ) | O P I N I O N |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: MERRITT, GIBBONS, and MCKEAGUE, Circuit Judges.

**McKeague, Circuit Judge.** Georgia Brown sued her former employer, the Detroit Medical Center ("DMC") alleging that the DMC retaliated against her for alleging pay discrimination based on race, sex, and age, and for disclosing unauthorized billing of Medicare. In an eight-count complaint Brown brought claims under Title VII of the Civil Rights Act of 1964, the Equal Pay Act, the Age Discrimination in Employment Act, and Michigan tort law. The district court granted summary judgment as to all of her claims, finding that Brown abandoned the vast majority of her claims by failing to address them in her response to the motion for summary judgment. The district court held also that Brown's retaliation claim failed on the merits because she did not establish a *prima facie* case of retaliation. For the reasons stated below, we **AFFIRM**.

## I. BACKGROUND

In October 2008, Brown interviewed and was hired by the Detroit Medical Center ("DMC") to serve as the Director of Care Management and Clinical Services at Harper University Hospital. While there is no detailed description of Brown's job at DMC, she was hired to supervise nurses and social workers and direct case management. In January 2009, DMC's Administrative Director left. Brown assumed additional responsibilities, and in return Brown requested a pay raise and job reevaluation. Following the reevaluation, Brown's job title became "Administrative Director of Care Resource Management and Adult Clinical Services," and her pay grade was increased.

About a year later, after learning that two white male physician assistants subordinate to her were paid more than she was, Brown requested a pay raise in an email to the Director of Payroll, Robert Griswold. In her message to Griswold, Brown never suggested that discrimination based on race, sex, or age caused the pay disparity and never mentioned the fact that both subordinates were white males. R. 24-3, Brown Letter to Griswold at 2, PageID # 344. And in later emails, Brown asserted only an entitlement to earn more than the subordinates and never any allegations regarding discrimination. *Id.*; R. 24-4, Brown Emails to Griswold, PageID # 346-48; R. 17-2, Brown Dep. at 17, PageID # 142. Brown also testified that she never told her supervisor, Dr. Reginald Eadie, that she thought her pay was too low because of her race, sex, or age. R. 17-2, Brown Dep. at 17, PageID # 142. Brown was never awarded a raise.

Brown received a favorable Performance Evaluation in May 2010 from Dr. Eadie.
Brown does not claim that Dr. Eadie discriminated against her on the basis of race, sex, or age
on her Performance Evaluation. R. 17-2, Brown Dep. at 13, PageID # 138.

By July 2010, Brown's job performance was unsatisfactory. The hospital's Chief
Financial Officer, Tina Wood, claimed that Brown was failing to ensure proper patient "access
management." R. 17-10, Dep. of Tina Wood at 3, PageID # 190. DMC identified many issues
with Brown's performance. The hospital moved fourteen "access management specialists" who
reported to Brown to a different supervisor. Medicare billing irregularities were identified in
forty cases for which Brown and her staff were responsible. Brown admitted that the forty cases
were a source of false billing to Medicare, but claimed that she was not responsible. She
expressed her concern to Wood and DMC's Chief Executive Officer, Dr. Tom Malone, that the
billing could lead to legal ramifications. Brown admits that no supervisor or manager of DMC
ever said anything critical to her for raising this concern. R. 17-2, Brown Dep. at 20, PageID #
145. Additionally, Wood expressed concern that the number of unpaid accounts had increased
by 284% in one year, and attributed the increase in large part to Brown's staff. R. 17-10, Wood
Dep. at 4, PageID # 191. Finally, Brown's new supervisor, Dr. Patricia Uddyback received
complaints from Brown's subordinates alleging that Brown was very rude to them. Furthermore,
Uddyback had to cover many of Brown's responsibilities.

In October 2010, Uddyback placed Brown on a thirty day Performance Improvement
Plan ("PIP"). Brown was placed on the plan because of "unacceptable performance" in job
duties and warned that her failure to "meet all expectations within the designated period of time

3

will result in termination." R. 17-13, Performance Improvement Plan at 1, PageID # 201.

Brown failed to improve her performance and was terminated on November 19, 2010.

On January 14, 2011,[1] Brown filed an Equal Employment Opportunity Commission

("EEOC") charge alleging pay-based discrimination on her race, sex, and age. R. 17-17, EEOC

Charge at 1, PageID # 212. She complained that she was discriminatorily discharged and stated

that "two white male physicians assistants," who were "subordinates," were paid more in wages.

*Id.*

Brown filed a complaint in the United States District Court for the Eastern District of

Michigan on December 16, 2011, seeking damages and injunctive relief. Brown alleged eight

counts in her Complaint, under Title VII of the Civil Rights Act of 1964, the Equal Pay Act, the

Age Discrimination in Employment Act, and Michigan tort law. Brown's counts included: (1)

race discrimination; (2) gender/sex discrimination; (3) retaliation; (4) age discrimination; (5)

harassment and hostile work environment; (6) violations under the Equal Pay Act; (7) intentional

---

[1] In district court, DMC raised the issue that some of Brown's claims were barred by the statute of limitations. R. 17, Mot. Summ. J. at 12-14, PageID # 115-17. The district court declined to rule on the statute of limitations issue, finding that each potentially barred claim "fails on other grounds." R. 33, District Court Op. at 6, FN 1, PageID # 549. Brown only raises her Title VII race discrimination claim, Title VII retaliation claim, and discharge in violation of Michigan public policy claims on appeal. Accordingly, this Court need not address whether Brown filed within the applicable statute of limitations, as it has been clearly established that Brown abandoned her Title VII race discrimination claim and the district court expressly ruled on the merits of the Title VII retaliation claim. The issue of whether Brown abandoned her Michigan public policy claim is a more complex issue—this Court will briefly discuss it on the merits because the district court failed to do so.

infliction of emotional distress; and (8) defamation of professional reputation and status.  R. 1,

Complaint, *passim*.

DMC filed a motion for summary judgment and Brown filed a response.  On January 9,

2013, the district court granted DMC's motion as to all claims on two theories: (1) Brown had

abandoned some of her claims; and (2) Brown's remaining claims failed as a matter of law.

The district court found that Brown had abandoned many of her claims, by failing to

respond to each claim raised in DMC's motion for summary judgment.  Brown had notified the

court in her response that she was declining to address her counts of "defamation, intentional

infliction of emotional distress, and discrimination under the ADEA" as all remedies provided

for under these counts are also made available under Title VII and the Equal Pay Act.  R. 24,

Response to Mot. for Summ. J. at 5,  Page ID # 314.  The district court found that, in addition to

the claims Brown openly stated that she was not planning to address, Brown never discussed

"her claims for race, sex, and Equal Pay Act discrimination and for harassment and a hostile

work environment."  R. 33, District Court Op. at 3, Page ID # 546.  The district court found that

Brown defended only the claim for Title VII retaliation and belatedly raised a claim for

retaliation under the Equal Pay Act.  *Id.*

The district court held that the emails Brown relied on did not support a retaliation claim

because they "neither complain nor approach complaining about a practice in violation of the

Equal Pay Act or Title VII."  *Id.* at 4, Page ID # 547.  The district court found that while Brown

complained that her pay was lower than two white male subordinates, she never mentioned race

or sex in her emails to DMC supervisors and never alleged any discrimination when complaining

about her lower pay. Furthermore, the district court found that even if Brown could show that she had a claim under Title VII or the Equal Pay Act, Brown could not show that DMC's reasons for termination were pretextual. *Id.* at 5-6, Page ID # 548-49. Brown filed her notice of appeal with this Court on January 11, 2013.

## II. ANALYSIS

### A. Standard of Review

We review *de novo* a district court's grant of summary judgment. *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a grant of summary judgment, we must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Abandonment of Claims

First we address the issue of whether Brown abandoned the claims that she failed to defend in her response to DMC's motion for summary judgment, which addressed all claims, asserting both attacks on the merits and statute of limitations arguments. Brown asserted eight counts in her complaint, but her response to the motion for summary judgment expressly declined to address counts 4, 7 and 8 (age discrimination, intentional infliction of emotional distress, and defamation) and also simply failed to discuss counts 1, 2, 5, and 6 (race and gender discrimination and Equal Pay Act claims). R. 24, Brown's Response at 5, Page ID # 314. The district court held that Brown abandoned the claims that she expressly declined to address and

the claims she never discussed in her response.  As the district court explained, "even if two claims provide the same remedy, a plaintiff asserting both needs to establish the legal elements of each."  R. 33, District Court Op. at 3, Page ID # 546.

DMC argues, as it did in the district court, that Brown has abandoned the claims that she failed to support in her response to DMC's motion for summary judgment.  Brown does not address the abandonment issue, explicitly, and only sets forth arguments for her claims of racial discrimination under Title VII, a new claim of racial discrimination under the Michigan Elliot-Larsen Civil Rights Act ("ELCRA"), retaliation under Title VII, a new claim of retaliation under ELCRA, and her claim of discharge in violation of public policy.  There is no dispute that Brown only addressed her retaliation claims under Title VII (Count 3) and the Equal Pay Act (Count 6) in her response to DMC's motion for summary judgment.  Yet Brown's only contention regarding abandonment on appeal is that she did not abandon her "public policy" claim.

This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.  *See Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment);  *Clark v. City of Dublin*, 178 F. App'x 522, 524–25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim); *Conner v. Hardee's Food Sys.*, 65 F. App'x 19, 24–25 (6th Cir. 2003); *see also Colston v. Cleveland Pub. Library*, No. 1:12-CV-204, 2012 WL 3309663, at *2 n.2 (N.D. Ohio Aug. 13, 2013) (deeming a claim

abandoned and granting summary judgment when a plaintiff "did not respond or even mention

[the] claim in her opposition to Defendants' motions for summary judgment").

Accordingly, this Court agrees with the district court. Brown abandoned her claims for

(1) Title VII race discrimination; (2) Title VII gender/sex discrimination; (4) ADEA age

discrimination; (5) harassment and a hostile work environment; (6) Equal Pay Act

discrimination; (7) intentional infliction of emotional distress; and (8) defamation. Thus, it is

only left for this Court to address Count 3 (Title VII retaliation claim) and the discharge in

violation of public policy claim.

The issue of whether Brown abandoned her claim based on "public policy" is complex.

First, none of Brown's eight counts specifically set forth a claim based on public policy.[2]

However, Brown is correct in arguing that her complaint includes factual allegations for

violations of public policy. *See* Pet. Rep. Br. at 4; R. 1, Complaint at 11, PageID # 11.

Furthermore, this Court finds that DMC acknowledged that Brown had stated a claim based on

public policy but argued that her claim was barred because of the statute of limitations. R. 17,

Mot. Summ. J. at 20, PageID # 117. Brown makes a strong case that this claim was never

---

[2]Federal Rule of Civil Procedure 10(b) provides that if such practice would promote clarity, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." While this Court has not explicitly addressed whether failure to separately state counts provides grounds for a court to either dismiss the claim or consider it "abandoned," this Court simply notes that while Brown may make allegations that her discharge violated public policy, it is difficult to recognize her public policy claim because she failed to separately state this claim as a count. *See also Northwest Airlines v. Glenn L. Martin Co.*, 9 F.R.D. 551, 552 (N.D. Ohio 1949) (holding that separation of claims into separate counts is mandatory only if more than one claim has been joined in a complaint and separation will facilitate clear presentation) (citation omitted).

abandoned because DMC moved for summary judgment solely based on statute of limitations grounds, and the district court failed to address the statute of limitations issue. As the district court never addressed the merits of the public policy claim, this Court will review the arguments as to her public policy claim as well as to her Title VII retaliation claim.[3] R. 33, District Court Op. at 6, FN 1, PageID # 549.

## C. Title VII Retaliation

The 1964 Civil Rights Act protects employees from retaliation when they have opposed discriminatory employment practices. 42 U.S.C. § 2000e-3(a). Courts analyzing retaliation claims apply the *McDonnell Douglas/Burdine* framework of shifting burdens of production and proof. *Harrison v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 80 F.3d 1107, 1118 (6th Cir. 1996). To establish a *prima facie* case of retaliation under Title VII, Brown must show: (1) she engaged in Title VII "protected activity;" (2) DMC knew that she engaged in the protected activity; (3) DMC subsequently took an adverse employment action against Brown; and (4) the adverse action was "causally related" to the protected activity. *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). If Brown establishes a *prima facie* case of retaliation, the burden of production shifts to DMC to provide a legitimate, nondiscriminatory basis for the adverse action. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). If DMC

---

[3]Brown states the standard for stating a retaliation claim under the ELCRA. However, this claim was never stated in Brown's complaint. After a review of the complaint, this Court found that ELCRA is mentioned only one time, in stating that DMC was Brown's employer within the meaning of ELCRA. However, there is no further mention of ELCRA in her complaint, no claims under ELCRA are alleged, and Brown has first raised this claim on appeal. Accordingly, this Court will not consider a retaliation claim under ELCRA as Brown never alleged such claim in her Complaint.

provides such a reason, then the burden of production shifts back to Brown to show the "proffered reason was not the true reason for the employment decision" and was merely pretext. *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). The burden of persuasion remains with Brown throughout this burden-shifting analysis. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Title VII prohibits retaliatory conduct by an employer when an employee engages in protected activity. "Protected activity" is classified as one of two things: (1) when an employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]", the participation provision; or (2) when an employee has "opposed any practice" made unlawful under Title VII, the opposition provision. 42 U.S.C. § 2000e-3(a). A plaintiff alleging Title VII retaliation, based on the "opposition" provision, is required to put her employer on notice that her complaint concerns statutory rights. *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989). "An employee may not invoke the protections of the Act (Title VII) by making a vague charge of discrimination. Otherwise, every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation simply by an employee inserting a charge of discrimination." *Id.*; *see also Holden v. Owens-Illinois, Inc.*, 793 F.2d 745, 751 (6th Cir. 1986) (holding that Title VII does not protect all "opposition" activity).

A plaintiff alleging a retaliatory discharge must demonstrate that the decision-maker had knowledge of the protected activity. *Mulhall v. Ashcroft*, 287 F.3d 543, 551–52 (6th Cir. 2002). A plaintiff is not required to have direct evidence that her employer knew of the plaintiff's

protected activity. *Id.* at 552. A plaintiff may survive summary judgment by producing circumstantial evidence to establish this element of her claim. *Id.*

To establish a causal connection, a plaintiff must "proffer evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (internal quotations omitted). Brown argues that she engaged in "protected activity" by sending several emails to her supervisors. Following a *de novo* review of the district court record, this Court finds that Brown's emails do not rise to the level of "protected conduct" required to state a Title VII *prima facie* claim of retaliation. Brown's email to her supervisors regarding the difference in pay between herself and her subordinates does not allege race, sex, or age discrimination. R. 24-3, Brown Email to Griswold at 2, PageID # 344. Brown simply notes that "[s]ubordinates" had a significantly higher base salary than she did. *Id.* The racial identification of Brown's subordinates does not appear in the emails and neither does the word "discrimination." Because a claim based on Title VII retaliation must clearly put the employer on notice that the employee is opposing a practice made unlawful under Title VII, Brown has not presented evidence that she was engaged in a "protected activity," nor that DMC had knowledge of the activity.

Furthermore, even if this Court were to find that Brown engaged in "protected conduct," Brown has failed to provide any evidence that the reasons DMC provided in explaining the reason for her discharge was merely "pretext" to cover up a Title VII violation. As mentioned before, part of the reason Brown was discharged was her failure to improve her performance after being placed on a performance improvement plan and also the various complaints

Uddyback received regarding Brown's interactions with her subordinates. Brown attempts to show that DMC's reasons for her discharge were mere "pretext," by showing that certain alleged errors were improperly attributed to her. However, Brown does not provide any evidence to rebut Wood's claims that Brown and her staff were responsible for 40 cases that involved Medicare billing issues. Brown cites Uddyback's deposition to support her contention that she did not cause major losses for the hospital with regard to forty outstanding Medicare cases that were Brown's primary responsibility. However, the deposition does not provide any support for this claim. R. 17-14, Uddyback Dep. at 2, PageID # 205. Uddyback does not state that Brown and her department were not responsible for the losses. Pet. Br. at 20. This Court concludes that Brown has not produced sufficient evidence to show that DMC's reasons for her discharge were merely pretextual.

Accordingly, Brown has not produced sufficient evidence to show that there is a genuine issue of material fact. Accordingly, we **AFFIRM** the district court's grant of summary judgment on Brown's Title VII retaliation claim.

**D. Violation of Michigan Public Policy**

Michigan courts recognize that while employment contracts may be terminated at any time for any, or no, reason, certain grounds for discharge are so contrary to public policy as to be actionable. *Suchodolski v. Michigan Consol. Gas Co.*, 412 Mich. 692, 694–95 (1982). To state a claim that Brown was discharged in violation of Michigan "public policy," Brown must show that her discharge was prohibited in "explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment." *Id.* at 695. Some Michigan courts have also found

12

sufficient "legislative expression of policy to imply a cause of action for wrongful termination" where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment. *Id.*

Brown does not specify the violation of public policy on which she relies. Instead, she cites 42 U.S.C. §1320a-7b(a) and 42 U.S.C. §1320a-7a(a). Pet. Br. at 27-28. These provisions address the criminal and civil penalties for an individual who is aware of fraud in a federal healthcare program and who assists in concealing such fraud. Brown relies on the fact that she informed senior management of the erroneous billing practices, and her subsequent discharge, as proof that she was discharged in violation of public policy. Pet. Br. at 28.

The undisputed material facts, however, do not support Brown's claim. Brown argues that she intended to report alleged Medicare fraud to Vanguard at a meeting of managers, which was scheduled to take place after her termination. Pet. Br. at 28. However, there is not a scintilla of evidence that Brown ever told Uddyback, or anyone else, that she intended to do so—or, that Dr. Uddyback, or anyone else, was hostile or retaliatory towards Brown because of her unstated intention. Furthermore, while Brown testified that she informed senior management about certain billing errors, she has presented no evidence that she was fired in retaliation for reporting these concerns. Accordingly, Brown's claim that she was discharged in violation of public policy is without merit.

### III. CONCLUSION

Because Brown has failed to establish that there is a genuine dispute as to material fact regarding her Title VII claim of retaliation and her claim of discharge in violation of public policy, we **AFFIRM** the district court's grant of summary judgment in favor of DMC.