**Johnny FRAZIER et al., Plaintiffs,**

v.

**CITY OF CHATTANOOGA, et al., Defendants.**

**Civil No.: 1:14–CV–128.**

United States District Court, E.D. Tennessee, at Chattanooga.

Filed 11/23/2015

Michael E. Richardson, Tidwell, Izell and Richardson, Attorneys at Law, Chattanooga, TN, for Plaintiff.

Valerie L. Malueg, Phillip A. Noblett, Office of Chattanooga City Attorney, W. Scott Parrish, Zachary H. Greene, Miller & Martin, PLLC, Cameron S. Hill, Melanie Prince, William E. Robinson, Baker, Donelson, Bearman, Caldwell & Berkowitz, Chattanooga, TN, for Defendants.

### MEMORANDUM

CURTIS L. COLLIER, UNITED STATES DISTRICT JUDGE

In 2013, the Defendant City of Chattanooga (the "City") organized a task force of interested stakeholders to develop a plan to address anticipated shortfalls in the Chattanooga Fire and Police Pension Fund (the "Fund"). In March 2014, the City Council passed an ordinance that adopted portions of the package proposed by the task force and incorporated those changes into the Chattanooga City Code (the "City Code"). At all times relevant to this litigation the City Code provided pensioners with a cost of living adjustment ("COLA"). Prior to the most recent set of changes, retired fire and police pensioners were provided with a 3% fixed-rate COLA ("Former COLA"). The COLA is applied in January of each year. The March 2014 ordinance modified the COLA ("Modified COLA") such that pensioners will receive an adjustment of between 1% and 2% depending on the amount of benefits they receive with an average increase of 1.5% across beneficiaries. When the Fund is funded at 80%, the Modified COLA will track the consumer price index up to a maximum increase of 3%.

Plaintiffs Johnny H. Frazier, Reuben K. Salter, William A. Melhorn, Jr., and James G. Gaston (collectively "Plaintiffs") are all retired beneficiaries of the Fund. Plaintiffs challenge the 2014 modification, arguing that the Former COLA was a vested benefit and that depriving them of this benefit violates the Contracts Clause, the Due Process Clause, and the Takings Clause of the United States Constitution as well as the Law of the Land Provision of the Tennessee Constitution. Plaintiffs filed a motion for a preliminary injunction to require the City and the Fund to continue to apply the Former COLA during the pendency of this litigation. Defendants filed motions for summary judgment, arguing that the City Code does not create a contractual right or a property interest in the COLA (Docs. 23 & 25.) The Court denied Plaintiff's preliminary injunction motion on March 3, 2015 (Doc. 34), but deferred ruling on the motions for summary judgment and allowed discovery to proceed. Defendants filed supplemental motions for summary judgment arguing that even if the

Plaintiffs had a property or contractual interest in the Former COLA, summary judgment would still be proper because discovery showed the changes were necessary to preserve the actuarial integrity of the Fund (Docs. 39 & 43.) Plaintiffs have responded to the supplemental motions for summary judgment (Docs. 45 & 46), but the response was stricken due to its untimeliness (Doc. 48). The Court heard argument on the summary judgment motions on November 17, 2015. For the reasons set forth below, the Court will **GRANT** Defendants' motions for summary judgment (Docs.23, 25, 39, 43).

## I. BACKGROUND

The pension plan for the City's firefighters and police officers was originally established by an amendment to the City Charter in 1949. The original plan contained no provision for a COLA. That pension plan became the Fund. The City first added a COLA to the Fund in 1980. That COLA was pegged to the consumer price index subject to a 3% maximum and a 0% minimum. In 2000 this variable COLA was replaced by a fixed COLA, the Former COLA in this litigation. The 2000 ordinance amended § 2–417, the COLA provision, to provide that: "The benefits payable to retired members or any of their survivors or beneficiaries shall be increased each January 1, following the first twelve (12) months of benefit, by three percent (3%)." (Doc. 20–3, Noblett Dec., Exh. 3 (hereinafter "City Code").) In 2014, the City Code provisions governing the Fund were again amended to address shortfalls originating in the financial crisis of 2008. Part of the changes implemented by the March 2014 ordinance modified the COLA such that pensioners will receive an adjustment of between 1% and 2% depending on the amount of benefits they receive with an average increase of 1.5% across beneficiaries.[1] It is this change that Plaintiffs argue violates their rights.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir.2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir.2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir.2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere

---

1. The formula is complex and has certain triggering provisions based on the financial stability of the Fund. Pensioners will receive a variable COLA that depends on their total pension benefit. The variability is designed so that the pensioners with the least pension will receive the greatest benefit from the COLA. This variable COLA will average 1.5% across pensioners. Once the Fund is 80% funded, pensioners will receive a variable COLA pegged to the consumer price index up to 3%. These complexities are not relevant for purposes of this lawsuit; rather, the operative fact is that the COLA was changed so that Plaintiffs will receive a smaller upward adjustment under the Modified COLA than they would be entitled to under the Former COLA.

allegations." *Smith v. City of Chattanooga*, No. 1:08–cv–63, 2009 WL 3762961, at *2–3 (E.D.Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant summary judgment. *Id.* at 251–52, 106 S.Ct. 2505; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994).

## III. ANALYSIS

Plaintiffs claim that the mandatory language of the Former COLA creates a contractual right and a protected property right such that the City's amendment of that provision violates their State and Federal Constitutional rights. All of Plaintiffs' claims depend on the existence of a contractual or property right to the Former COLA. Because Plaintiffs have failed to produce evidence that would support such a right, the Court will **GRANT** Defendants' motions for summary judgment.

### A. Contracts Clause

■ The Contracts Clause of the United States Constitution provides that "No State shall … pass any … Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. In evaluating claims for violations of the Contracts Clause, "[c]ourts must determine (1) whether a plaintiff has established 'a substantial impairment' of a contractual relationship, (2) whether the state has a 'significant and legitimate public purpose behind the regulation' such as the 'remedying of a broad and general social or economic problem,' and (3) whether the impairment is reasonable and necessary to serve that purpose." *Welch v. Brown*, 551 Fed.Appx. 804, 810 (6th Cir.2014) (quoting *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–12, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983)).

■ Meeting the substantial impairment element requires that a plaintiff establish that there was a contractual relationship and a change in the law that substantially impaired that relationship. *Wojcik v. City of Romulus*, 257 F.3d 600, 612 (6th Cir.2001). "[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *Nat. R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465–66, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985) (quoting *Dodge v. Bd. of Educ.*, 302 U.S. 74, 79, 58 S.Ct. 98, 82 L.Ed. 57 (1937)). The Supreme Court has explained the basis for this presumption as follows:

> This well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state. Policies, unlike contracts, are

inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body. Indeed, the continued existence of a government would be of no great value, if by implications and presumptions, it was disarmed of the powers necessary to accomplish the ends of its creation. Thus, the party asserting the creation of a contract must overcome this well-founded presumption and we proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation.

■ *Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. at 466, 105 S.Ct. 1441 (internal citations and quotations omitted). The language of the statute or ordinance at issue is controlling on the question of whether a contractual right has been created. *Id.* at 466, 105 S.Ct. 1441.

Because the legislation controls, the Court will begin with the City Code provision both sides agree is dispositive. In § 2–411(d), the City Code provides that

The City Council, City of Chattanooga, in its discretion, only after a recommendation of the Board of Directors of the Fire and Police Pension Fund, upon advice by the Mayor, may, by ordinance, passed on three separate readings, amend any section of the Private Acts of 1949, as amended, or this Article XIII; provided that such amendment is not inconsistent with sound actuarial principles, methods, and actuarial assumptions and further provided that such amendment shall not in any way decrease *any vested financial benefits accrued* by any participant or beneficiary of the Fire and Police Pension Fund.

City Code § 2–411(d) (emphasis added). The City Code thus shows intent to be bound with regard to "vested financial benefits" that have accrued. If the COLA is an accrued, vested, financial benefit, the City is bound. The parties agree that no other City Code provision is fairly read to bind the city on its own; thus, if the COLA is not an accrued, vested financial benefit, the City is not bound.

The Code's vesting provisions provide as follows:

[A] member who has completed ten (10) or more years of active service at the time of his or her termination of employment, or at the time he or she has been on leave without pay for a period in excess of ninety (90) consecutive days, shall have the right to either (1) or (2) as follows:

(1) A right to receive a 100% refund of whatever sums he or she contributed to the Pension Fund....

(2) A right to leave his or her contribution in the Pension Fund and be eligible to receive after reaching fifty-five (55) years of age a monthly deferred vested retirement benefit equal to 2.4% of his or her Average Base Salary as computed over the highest three (3) years of pay during the member's years of service for each year of active service, subject to a maximum of twenty-five (25) years.

City Code § 2–415. This provision sets forth the point at which benefits vest—after ten years of service. But more importantly for the Court's analysis, it also sheds light on which benefits vest. City Code § 2–415 gives a pensioner a vested right to either receive a 100% refund of his contribution or to defer his refund and receive an annual retirement benefit calculated as a percentage of his average salary during his best three years. The COLA is not referenced in either of the vesting provisions. The COLA is also not referenced in the list of retirement and pension

benefits available under City Code § 2–418. The COLA is instead set forth in a wholly separate provision, which provides that "[t]he benefits payable to retired members or any of their survivors or beneficiaries shall be increased each January 1, following the first twelve (12) months of benefit, by three percent (3%)." City Code § 2–417.

■ The plain language of the City Code shows that the COLA is not a vested financial benefit. The Court requires a "clear indication" of a legislative intent to be bound before the Court will infer a contractual obligation from a legislative enactment. *Nat. R.R. Passenger Corp,* 470 U.S. at 465–66, 105 S.Ct. 1441. City Code § 2–411(d) expresses an intent to be bound with regard to vested accrued financial benefits. *Id.* The Code's vesting provisions do not reference the COLA, *see* City Code § 2–415, nor is it included in the list of retirement and pension benefits that can vest, *see* City Code § 2–418. The placement of the COLA in a provision of the City Code apart from the vesting provisions and the provisions listing retirement and pension benefits indicates that the COLA is not a vested financial benefit.

Furthermore, even if it was vested, it was not accrued. A right does not accrue until it becomes enforceable. *See* ACCRUE, Black's Law Dictionary (10th ed. 2014) ("To come into existence as an enforceable claim or right; to arise."). The

COLA does not become enforceable until it is applied, and it is not applied until January 1 of each year. Thus, the Former COLA provision has neither accrued nor vested.

The Plaintiffs' primary counterargument runs as follows.[2] By using the term "financial benefit" rather than pension benefit in City Code § 2–411, the City Council must have meant to bind itself with regard to some kind of benefit that is broader than simply pension or retirement benefits. The 3% COLA is such a "financial benefit" because it benefits the Plaintiffs financially. This also explains why the COLA was not mentioned in the vesting provision regarding the pension benefits. It is not a pension benefit; rather, it is a financial benefit. Second, by using the mandatory "shall" and changing the COLA from a variable COLA to a fixed COLA, the City evinced intent to be bound.[3] Finally, Plaintiffs argue that their rights vest upon ten years of service, *see* City Code 2–415, and so their right to the COLA has vested.

■ The mere use of the word "shall" does not suffice to show a clear indication of intent to be bound. Legislatures often use the word shall to remove discretion from their agents. Read this way, the City Code removes any discretion on the part of the Fund by telling it exactly how to apply the COLA provision. Divining an

---

2. Plaintiffs rely heavily on *Blackwell v. Quarterly Cnty. Court of Shelby Cnty.,* 622 S.W.2d 535 (Tenn.1981), which involved a challenge to several changes in a state pension plan that affected the calculations for the base monthly benefits. It did not involve a COLA and is thus not particularly illuminating to the dispute before the Court.

3. Plaintiffs seek to shore up their argument regarding legislative intent by citing to several documents prepared by the Fund and the Pension Reform Task Force. Plaintiffs claim

that these representations and documents establish that they have a contractual right to the Former COLA. The Sixth Circuit, however, has recently held that, in establishing rights under the Contracts Clause, "[p]laintiffs may not rely on extrinsic evidence, such as representations from city officials, particularly where those alleged representations directly contradict the unambiguous language of the statute." *Puckett v. Lexington–Fayette Urban Cnty. Gov't,* 566 Fed.Appx. 462, 473 (6th Cir.2014).

intent to be bound solely from the use of mandatory wording would effectively remove a valuable linguistic tool from the legislature's lexicon and force the legislature to empower its agents with discretion lest it risk rendering its enactments binding on future legislatures. It is precisely to avoid these kinds of constraints on the legislature that courts require a "clear indication" before inferring intent to be bound. *Nat. R.R. Passenger Corp.*, 470 U.S. at 465–66, 105 S.Ct. 1441.

Finally, the purpose of a COLA provision weighs against finding that it is a vested benefit. A COLA is an adjustment to the pensioners' benefits rather than a benefit itself. It is designed to ameliorate the effects of inflation and is a compounded adjustment to the pension benefit. It makes sense that the City would preserve its ability to adjust the COLA to respond to shifts in inflation rather than locking itself in to a 3% COLA for all time. In *Maine Assoc. of Retirees v. Bd. of Trustees of Maine Pub. Employees Ret. Sys.*, the First Circuit credited a similar argument and held that because both the language and the purpose of a statutory COLA were consistent with the legislature reserving the right to adjust the COLA to serve its deflationary purpose, the Contract Clause claim failed. 758 F.3d 23, 30 (1st Cir. 2014). Similar reasoning has been employed by other courts in holding that pensioners had no contractual rights to COLA provisions in public pension plans. *See, e.g., Justus v. State*, 336 P.3d 202, 212 (Colo.2014) (collecting cases holding that pensioners had no contracts clause claim based on COLA provisions). *But see Fields v. Elected Officials' Ret. Plan*, 234 Ariz. 214, 320 P.3d 1160 (2014) (finding that pensioners did have a right to a COLA provision, but doing so under the Arizona State Constitution's Pension Clause). The same reasoning applies here

and buttresses the conclusion Plaintiffs have no contractual right to the COLA.

The Court will **GRANT** Defendants' motion for summary judgment as to the Plaintiffs' Contracts Clause Claim.

### B. Other Constitutional Claims

Although Plaintiffs reference the Due Process Clause and the Takings Clause of the Federal Constitution as well as the Law of the Land Clause of the Tennessee Constitution in their Complaint, (Doc. 1–1), they did not mention these claims in their briefing in response to Defendants' motion for summary judgment (*see generally* Doc. 26). The Sixth Circuit has expressly held that a plaintiff who fails to address a claim in response to a motion for summary judgment has abandoned the claim. *Brown v. VHS of Michigan, Inc.*, 545 Fed.Appx. 368, 372 (6th Cir.2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

Even if Plaintiffs had not abandoned these claims, the analysis under the Due Process Clause and the Takings Clause tracks the same lines as the analysis under the Contracts Clause and these claims fail for much the same reason that the Contracts Clause claim fails. Courts approaching factually similar situations have treated the claims together. *See, e.g., Puckett v. Lexington–Fayette Urban Cnty. Gov't*, 60 F.Supp.3d 772, 775 (E.D.Ky.2014) (addressing Contracts, Takings and Due Process claims and noting the "[a]ll of the plaintiffs' constitutional claims depend on a finding of a legally cognizable contract or property right in the pre-amendment COLA rate of 2% to 5%").

### 1. Due Process Clause and Law of the Land Claims

■ A procedural due process claim requires that the plaintiff show that he has been deprived of a protected property interest without due process of law. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Due Process clause and the Tennessee Law of the Land Clause are interpreted functionally identically for purposes of the kind of claim alleged here. *Martin v. Sizemore*, 78 S.W.3d 249, 262 (Tenn.Ct.App.2001). Both require a protected property interest in which the claimant has a legitimate claim of entitlement. *Id.* ("To qualify for constitutional protection, a property interest must be more than a 'unilateral expectation' or an 'abstract need or desire.' It must be a 'legitimate claim of entitlement' created and defined by 'existing rules or understandings that stem from an independent source such as state law.' ") (citing *Roth*, 408 U.S. at 577, 92 S.Ct. 2701).

■ "A contract . . . may create a property interest." *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir.2000). "But to have a property interest in a contractual benefit, a person must 'have a legitimate claim of entitlement to it.' " *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 432 (6th Cir.2014). "[A] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir.2002). To support a Procedural Due Process claim, Plaintiffs "must point to some policy, law, or mutually explicit understanding that both confers the benefit and limits the discretion of the City to rescind the benefit." *Id.* In other words, Plaintiffs must show that the legislature bound itself to provide the Former COLA. Plaintiffs have failed to demonstrate such an intent to be bound. *See supra* Part III.A.

■ Even if the Plaintiffs did have a property right in the COLA, Procedural Due Process only prevents the deprivation of property without adequate process. And "the legislature which creates a statutory entitlement (or other property interest) is not precluded by having done so from altering or terminating the entitlement by subsequent legislative enactment." *Gattis v. Gravett*, 806 F.2d 778, 780 (8th Cir.1986). The legislative process is generally all the process that is required to satisfy the procedural due process clause. *Puckett*, 60 F.Supp.3d at 778. Here, the Modified COLA was adopted by the City Council after lengthy public meetings with all interested stakeholders. There is no basis for a finding that the process was lacking.

### 2. Takings Clause

■ The analysis on the Contracts Clause and Due Process Clause Claims above essentially foreclose a Takings Clause Claim as well. The Takings Clause prohibits the taking of private property without just compensation. U.S. Const. amndt. V. Where there is no property interest, there is no takings claim. Even under the more liberal Procedural Due Process standard discussed above, Plaintiffs have no property interest in the Former COLA. Property interests are defined much more narrowly for purposes of the Takings Clause. Generally, statutory entitlements are not covered by the Takings Clause. *See Pittman v. Chicago Bd. of Educ.*, 64 F.3d 1098, 1104 (7th Cir.1995) (holding that the Takings Clause does not extend to contractual rights). At least one District Court has expressly held that the Takings Clause does not cover an interest in a COLA benefit. *Puckett*, 60 F.Supp.3d at 779 ("Assuming the plaintiffs in this

case have a constitutionally protected property right in a COLA rate of 2% to 5%, it is a statutory entitlement and is not the kind of property required for a Takings Clause claim."). The Plaintiffs' Takings Claim fails on its merits.

\* \* \*

Plaintiffs have abandoned their Due Process, Law of the Land, and Takings Clause claims. Even if they had not been abandoned, the claims would fail on their merits. For these reasons, the Court will **GRANT** Defendants' motion for summary judgment on the Due Process, Law of the Land, and Takings Clause claims.

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendants' motions for summary judgment (Docs. 23, 25, 39, 43).

**An order shall enter.**