James A. BLACKWELL and Shirley Moseley, Plaintiffs-Appellees,

v.

The QUARTERLY COUNTY COURT OF SHELBY COUNTY, Tennessee, Its Chairman and Members, and Shelby County, Tennessee, Defendants-Appellants.

Supreme Court of Tennessee, at Jackson.

Sept. 21, 1981.

Petition for Rehearing Denied Oct. 26, 1981.

Frierson M. Graves, Jr., and Donald A. Malmo, Memphis, for defendants-appellants.

Donald W. Pemberton and Andrew R. Carr, Jr., Memphis, for plaintiffs-appellees.

OPINION

HARBISON, Chief Justice.

Presented in this case is the extent to which a local legislative body may validly modify the terms of a retirement and pension plan which it had previously adopted for the benefit of public employees. If such authority exists, two additional questions are presented: (1) the reasonableness of a 1977 modification challenged by members of the plan, and (2) determination of those members to whom it can validly be applied.

After a trial on the merits the Chancellor held that the governing body could make reasonable changes even if these were detrimental to the beneficiaries, but only upon condition that, simultaneously, "comparable new advantages" be authorized. There was no contention that there were such advantages accompanying the modification here at issue; accordingly, the Chancellor held the modification unconstitutional as impairing "the obligations of the implied employment contracts in question . . . ." The local governing body appealed.

The Court of Appeals held that governmental pension and retirement plans are governed by the common law of contracts and that employees under the retirement plan "had the vested right to earn the benefits of the plan as it existed and under the conditions of the plan as it existed upon entering into service of the County and accepting the plan as offered by contributing thereto." It found that there is a difference between "employment contracts" of public employees and "employee contributing pension contracts." Applying strict principles of contract law, it held that the employing governmental unit could not validly enact a modification or change detrimental to any employee member of the retirement system, whether such employee was or was not eligible to receive a pension or retirement allowance from the plan at the time the change was enacted.[1] The Court of Appeals relied heavily upon the case of Miles v. Tennessee Consolidated Retirement System, 548 S.W.2d 299 (Tenn. 1976), a case which the Chancellor had found not to be applicable.

We are of the opinion that both courts were in error and that necessary changes in public employee pension plans may be made by the governing body to the extent and under the conditions hereinafter discussed.

It should be stated at the outset that this opinion deals only with public employees whose compensation and term of office are not governed by special provisions of the state constitution, as were those of all of the judges involved in the Miles case, supra. That case, like any other, must be read and interpreted in light of its facts. The only public officials or employees involved in that case were elected state judges, whose compensation is expressly regulated and controlled by article VI, § 7, of the state constitution, prohibiting either an increase or decrease during the time for which such officials are elected. A similar provision affects the governor of the state, article III, § 7, and compensation of members of the General Assembly is regulated and controlled by article II, § 23. We emphasize that no such official is involved in the present case, unlike the Miles case, supra. Only employees of Shelby County are involved here. Some of them are elected officials having a definite term of office, but their compensation is not in any way controlled or affected by any special provision of the state constitution. Most of the members of the retirement and pension system are simply county employees, hired or appointed for no definite terms and subject to discharge at will or in accord with the local civil service regulations. This distinction is of primary importance. As a result the Miles case has only limited application to the questions presented.

---

1. U.S.Const. art. I, § 10; Tenn.Const. art. I, § 20.

## A. *The Shelby County Retirement and Pension System*

By Chapter 72 of the Private Acts of 1945 the Quarterly County Court of Shelby County was authorized to promulgate a plan of retirement and pension benefits for disabled or superannuated employees. That body was authorized by proper resolution to establish a retirement or pension system or systems to cover such public employees as might be designated, except those affiliated with the county Board of Education, which had a separate system already in existence. The Act authorized partial benefits for employees who were also covered by a municipal plan. The County Court was authorized to determine whether membership should be compulsory or optional and whether the plan should be contributory or noncontributory. The statute provided:

"The Quarterly County Courts may determine how the said contributions will be calculated and accumulated, the method of payment and who shall be the beneficiaries of said retirement or pension system or systems."

The County Court was authorized to provide for the administration and operation of the system and to obtain actuarial assistance in establishing it.

In 1949 the County Court adopted a resolution implementing this statute and creating a retirement system for county employees, to be administered by a Board of Administration.

In 1951 the governing statute was amended to authorize the inclusion of public officials who were either popularly elected or appointed by the County Court. Tenn. Private Acts, 1951, ch. 488.

Between the inception of the plan in 1949 and the enactment of the change now under consideration, the plan was amended on thirty-six separate occasions by appropriate resolutions of the County Court. Generally its coverage and benefits were broadened; it was changed from a voluntary to a compulsory system. Beneficiaries were re-

quired to contribute from the beginning, but the amounts of their contributions were increased so that by 1977 they were double the original requirements. Insofar as the record reveals, none of the amendments prior to the one now in question was ever challenged. The amendments could probably be considered favorable to employees and beneficiaries, although, as stated, the amounts of contributions required by participating employees were greatly increased.

The plan was not confined strictly to deferred compensation.[2] It included death and disability benefits as well as retirement pensions. As with any such plan, it was composed of three basic elements: (1) the benefit base, or final average compensation upon which benefits were to be calculated; (2) number of years of creditable service for retirement or disability benefits; and (3) percentage of pay for each annual period of service.

During the years between 1949 and 1977 each of these elements of the plan was changed on more than one occasion. By 1977 the years of creditable service for a retirement pension had been reduced from thirty to twenty-five, with no minimum age specified. The original plan required attainment of age sixty. Alternatively, if an employee had ten years of creditable service and had not yet reached age sixty, he was entitled to benefits under the plan when he did attain that age if his contributions were permitted to be retained in the system. Any employee who was discharged or who resigned from the system was permitted to withdraw his contributions if desired. Further, after twenty-five years of service, an employee could continue to accrue benefits for an additional ten years at a lower annual rate. Retirement was mandatory at age seventy.

The percentage of final average compensation, or benefit rate, was increased from 1.67 percent for each year of creditable service to 2.7 percent for each year up to twenty-five years; thereafter an employee

---

2. General statutes, not involved here, authorize tax-deferred compensation plans for employees of state and local governments. T.C.A. §§ 8–25–101 through 108.

could accrue benefits at the rate of one percent per annum for the next ten years, allowing a total of thirty-five years creditable service with maximum pension benefits being 77.5 percent of the final average compensation.

Final average compensation, or the benefit base, originally was computed upon the average of the highest compensation paid during five consecutive years. In 1967 an optional base was authorized, permitting an employee to use the last twelve months' salary prior to retirement, if higher than the five-year average previously authorized. It was a change in this provision, effective September 1, 1977, that occasioned the present litigation. At that time the Quarterly County Court changed the benefit base to an average of the three highest consecutive years' salary paid to an employee, rather than the two options previously referred to. This thirty-seventh amendment to the plan resulted in a potential reduction of benefits for most employees, apparently for the first time in the twenty-eight year history of the plan.

At trial, the reasonableness of this change was not challenged by the beneficiaries of the system. The reasons for the change were explained by an independent consulting actuary for the County. He stated that a benefit base computed upon the average of three years' compensation has become increasingly customary with respect to both public and private pension plans. In his opinion the one-year benefit base previously authorized was too volatile and was actuarially unsound for this system.[3] There was no contrary testimony offered, the position of the plaintiffs being that no detrimental change whatever, regardless of how reasonable or necessary for the financial integrity of the plan, could legally be made without unanimous consent of all affected beneficiaries. In his opening statement counsel for the employees said:

"We maintain, in reliance upon the *Miles* case which is cited in our brief and which we'll certainly argue later, that upon the employment the employee has a vested contractual right with the County and that no matter how reasonable any subsequent change might be to that plan, it's unconstitutional to change it as to those present employees."

Under the legal principles applied by the Chancellor and by the Court of Appeals, the testimony of the actuary was not relevant. Since it was uncontradicted and unimpeached, however, and since there was ample opportunity for the beneficiaries to challenge it or to offer countervailing testimony, in our opinion the testimony of the actuary should be accepted. Under the circumstances the facts testified to by him should be deemed established, if relevant under applicable legal principles.

B. *The Nature of Public Employment*

As stated previously, the members of the Shelby County Retirement and Pension System are not subject to any special constitutional provisions regulating compensation of public officers. Some of them hold offices by popular election. Others are appointed by the County Court. Most are employed on a day-to-day, week-to-week or other periodic basis, subject to termination or removal for cause. As to those who may not be covered by civil service or some other employee protection plan, employment, as a matter of common law, is terminable at will. Shelby County has a civil service system, but its terms and provisions have not been cited to us; apparently its provisions are not pertinent to the issues involved in this case.

■ Except as affected by a tenure or civil service system, a public employee ordinarily is not deemed to have a contract of employment within the meaning of the "impairment of contracts" provisions of the state and federal constitutions. This propo-

---

**3.** For example, if an employee received a large increase in salary during the last year of employment he could make a relatively small increased contribution to the plan for that year but could retire and receive benefits on the increased base for all prior creditable years without commensurate increase in contributions for those years. The three-year average rendered the system much more sound and less subject to abuse, in the actuary's opinion.

sition was stated early in the history of this state in the case of *Haynes v. State*, 22 Tenn. 480 (1842). There the Court considered the question:

"... whether the compensation of officers of the government may be changed, modified, and reduced by the Legislature, during the time for which such officers may have been appointed. And there can be no doubt but that such power exists, except in particular cases, where by the constitution it is expressly prohibited." 22 Tenn. at 481–82.

The Court further stated:

"The law fixing the compensation to be allowed for the discharge of the duties of an office does not constitute a contract with the officer who may be appointed, within the meaning of the Constitution of the United States. He takes the office with the liberty to relinquish it at any time he thinks proper, and with the understanding that his compensation is subject to legislative control. If this were not so, all those provisions in the Constitution which prohibit the leglislature from reducing the salaries of certain officers are unnecessary.

"But the introduction of such provisions in the Constitution shows the sense of that instrument as to those offices in relation to which no such provision exists." 22 Tenn. at 482.

■ As a general proposition, therefore, the salaries and compensation of public employees may be raised or lowered by the employer during their period of service, insofar as constitutional prohibitions are concerned. Except as previously noted, even those holding elected or appointive offices for a definite term have no fixed rate of compensation or guaranteed salary which is beyond modification by appropriate action of the public employer. They cannot be said to have "contracts" similar to those of judges involved in the *Miles* case.

■ The Court of Appeals emphasized that contracts made by governmental bodies are as binding as those made by private persons, and of this there can be no doubt. *See City of Chattanooga v. Tennessee Elec-*

*tric Power Co.*, 172 Tenn. 524, 112 S.W.2d 385 (1938). Employees of public bodies, however, ordinarily are not hired by formal contracts, and compensation for them, even including officials with a definite term, is ordinarily subject to increase or diminution.

■ Of course, direct compensation and pension benefits are not necessarily controlled by identical principles. At some point after an employee has performed services or has paid into a pension and retirement plan, he acquires fixed and immutable rights in the system. Such rights are subject to the terms and conditions of the pension plan, however, and no contractual rights, other than those conferred by the plan, exist simply by reason of employment. For example, in the case of *Williams v. City of Knoxville*, 220 Tenn. 257, 416 S.W.2d 758 (1967), an employee had voluntarily paid portions of his salary into a pension fund. He later resigned and sought to recover his contributions despite the fact that the governing statute, a portion of the city charter, provided that contributions of members who resigned or were discharged should revert to the pension fund. The employee contended that when he elected to participate in the fund he entered into a "contractual relationship" with the employer and that he was legally entitled to a return of his contributions. This Court held otherwise, pointing out that the fund in question there, like the one involved in this case, provided disability and death benefits as well as a retirement pension and that it was not strictly a deferred compensation plan. While the plan involved in this litigation provides for a return of contributions, such a provision is not required by the governing statute, by the common law of the state or by the employer-employee relationship.

### C. *Modification of Public Pension Plans*

As previously pointed out, the Shelby County retirement and pension systems have undergone significant modifications and amendments on numerous occasions. As stated by the actuary who testified, revi-

sions and modifications in such a plan are almost inevitably required. The initial structuring of such a plan is a complex matter. The actuary testified that almost every plan, at its inception, incurs an unfunded liability to employees entering it because of their years of prior creditable service existing at the date of inception, as to which years no contributions or funding had previously been made either by the employer or by the employees. The Shelby County plan, like many others, had such an unfunded liability at its inception and continues to have one because neither employee nor employer contributions have overcome that deficit. Further, when benefits were increased, both employer and employee contributions for the future were increased, but neither were made retroactive to cover past years of creditable service.

It is clear from the record that all actuarial projections are estimates, based upon statistics, and these are necessarily subject to correction and revision as experience necessitates. It is, of course, in the interest both of the public and of the participating employees that a fund initially be structured on a sound actuarial basis and that it be kept on such a basis as it is administered through the years. Otherwise, as the actuary pointed out, the plan may become insolvent to the detriment of all of the remaining employees in it, or the requisite funding may become so exorbitant as to be beyond the means of the public employer.

■ While we agree with the implicit holding of the courts below that a public employer may from time to time offer additional benefits which employees may accept expressly or by acquiescence, nevertheless we ˈᴀᴄ not convinced that a plan is "frozen" against detrimental changes or modifications the moment an employee begins to participate in it, where such changes are necessary to preserve the fiscal and actuarial integrity of the plan as a whole. It

seems to us that public policy demands that there be a right on the part of the public employer to make reasonable modifications in an existing plan if necessary to create or safeguard actuarial stability, provided that no then accrued or vested rights of members or beneficiaries are thereby impaired.

This, in our opinion, is the announced public policy of this state through several legislative enactments. T.C.A. § 8–34–204, dealing with the Tennessee Consolidated Retirement System, provides as follows:

"Every provision of chapters 34 through 37 of this title shall be subject to amendment or repeal by any session of the general assembly, provided that no such amendment or repeal shall diminish or annul, in any respect, any right acquired by a member or beneficiary under the provisions of chapters 34 through 37 of this title."

■ The Shelby County plan now under consideration is not part of the Tennessee Consolidated Retirement System. However, it is now subject to the provisions of T.C.A. § 3–9–101, establishing the Council on Pensions and Retirement. This council was organized in 1971. It was directed to develop and establish pension and retirement standards and a coherent state policy on pensions and retirement, "grounded in progressive and fundamental principles"; to study pension and retirement developments in other governments and in industry and business; to maintain a critical analysis of the federal social security program [4] and to

"(4) Appraise pension and retirement provisions in force in Tennessee from time to time, along with those in other states and recommend such changes as considered necessary or advisable in the state's laws;

"(5) Review proposals from other sources for changes in the state's laws and transmit recommendations concerning them to the General Assembly and the governor;

---

4. The national social security system and the railroad retirement system are not "contractual" and may be altered by appropriate congressional legislation. *U. S. Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 171, 101 S.Ct. 453, 458, 66 L.Ed.2d 368, 375 (1980); *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 575, 99 S.Ct. 802, 805, 59 L.Ed.2d 1 (1979).

"(6) Submit suggested legislation or amendments to the General Assembly and governor for the purpose of carrying out its recommendations . . . ." T.C.A. § 3–9–102.

Whenever any proposed legislation is introduced in the General Assembly to establish a new pension or retirement system or to change an existing one, the proposal is to be referred to the Council and to a standing committee for study and recommendations.

By Tenn. Public Acts 1981, chapter 137, officials of all local government retirement plans are required to report annually to the Council on the actuarial and financial status of each plan. It seems to us inescapable from these legislative provisions that the General Assembly considers that reasonable modifications may be made in public pension plans in order to keep them actuarially sound. While the initial Private Act of 1945 authorizing the Shelby County System did not expressly so provide, we think that this is implicit in the terms of the statute authorizing the Quarterly County Court to formulate and administer the plan.

Appellees point to a 1955 amendment to the Private Act which provides as follows:

"Provided that the provisions of the Retirement and Pension System · shall constitute vested interests between the members including retired beneficiaries and the County of Shelby." Tennessee Private Acts, 1955, ch. 197.

An identical provision was passed by the same General Assembly respecting the pension plan of the City of Memphis. In the provisions of the 1945 Act, above referred to, notice was taken by the General Assembly that there were persons who were jointly employed by the city and county.

In 1957 the charter of the City of Memphis was further amended by adding the following explanatory language to the provisions added in 1955:

"So that all of the assets of the retirement fund maintained for purposes of the retirement system of the City of Memphis shall, at all times, be used for the exclusive benefit of members (including retired members) of the retirement system of the City of Memphis, and their beneficiaries, as may be defined therein, and, in no event, shall the assets of the said retirement fund, or any part thereof, ever revert to the City of Memphis."

Although the statutes pertaining to the Shelby County system were not amended in 1957 to correspond to changes made in the city charter, nevertheless it is shown in the record that the County has always administered the funds in accordance with the directive of the 1957 statute quoted above, and no county funds allocated to the retirement system have ever been withdrawn or diverted to other county purposes.

In our opinion, the words "vested interests" used in the 1955 statutes pertaining to both the city and the county have the meaning which was elaborated upon and made express as to the city in the 1957 statute; that is, that employees had interests in the assets of the retirement system,[5] but not, as indicated by the Court of Appeals, in the precise clauses and terms of the plan as it existed at the inception of their employment, so as to render the same immutable and beyond necessary amendment by the governing body.

Many varied and conflicting views have been taken in other jurisdictions as to the rights of public officers and employees who are within the coverage of a statutory pension system. See 60 Am.Jur.2d, *Pensions and Retirement Funds* §§ 46–50 (1972); Annot. 52 A.L.R.2d 437 (1957). The Court has been assisted by excellent and extensive briefs furnished by counsel for all parties, elaborating upon the rules developed in the great volume of litigation in this area.

---

**5.** This is not an insignificant right. While contributions made by discharged or resigning employees may be withdrawn, employer contributions allocable to them may not. As of 1978 the Shelby County plan had some 4800 participating members paying in over $3.8 million annually. County contributions approximated $6 million per annum. The system had assets in 1978 exceeding $62 million.

Counsel for appellees have urged the Court, if it does not accept the strict contractual theory followed by the Court of Appeals, to adopt an approach which accommodates employees' rights and the government's legitimate interest in flexibility, such as was used by the Chancellor. This rule, referred to in their briefs as a "compromise rule", permits modifications which are reasonable, provided they are materially related to the soundness of the pension system and also provided that any disadvantages to employees are accompanied by "comparable new advantages." This rule, sometimes referred to as the California rule,[6] is contrasted with the so-called Pennsylvania rule, which permits reasonable modifications when necessary to protect or enhance actuarial soundness of the plan, provided that no such modification can adversely affect an employee who has complied with all conditions necessary to be eligible for a retirement allowance. *See Harvey v. Retirement Board of Allegheny County*, 392 Pa. 421, 141 A.2d 197, 203 (Pa. 1958); *see also Eisenberger v. Police Pension Comm'n of City of Harrisburg*, 400 Pa. 418, 162 A.2d 347 (Pa.1960).

We are of the opinion that the Pennsylvania rule is preferable. It is more in accord with the public interest requiring a reasonable amount of flexibility on the part of the public employer and with the legislative policies referred to above.

As pertinent to the present case, appellants agree that the 1977 modification of the retirement and pension system could not and should not be applied to employees who had at that time actually retired. They also agree in general that the modification cannot be applied detrimentally under the Pennsylvania rule to any employees who on September 1, 1977, were eligible to receive an allowance from the plan—in this instance, employees with ten years' creditable service. Appellants ask the Court to modify the Pennsylvania rule to provide

6. *See Allen v. City of Long Beach*, 45 Cal.2d 128, 287 P.2d 765 (Cal.1955).

7. As testified by the actuary for appellants, "If a person under the Shelby County plan has completed ten years of service he has a

that an employee who continued to earn and accrue benefits after September 1, 1977, would be subject, insofar as his future accruals are concerned, to the amended plan. Those employees, however, as of the effective date of the amendment, were eligible for retirement benefits on a base consisting of twelve months' earnings immediately prior to retirement.[7] We do not believe that this right should be or that it could validly be taken from them without their consent, even though they continued to be employed by the County and to accrue benefits in the future.

The 1977 resolution had a "lock-in" provision, guaranteeing that no employee's benefit base could ever be less than the average twelve months' salary prior to the effective date of the amendment. It was felt that this provision would afford a measure of protection to employees then nearing eligibility for retirement. We are of the opinion, however, that neither the lock-in provision nor the new benefit base could be applied adversely to any employee who as of September 1, 1977, had at least ten years' creditable service in the system. As to employees who did not at that time have such eligibility, the new benefit base, subject to the lock-in clause, may properly be applied, since the evidence shows that it meets the requirements of the Pennsylvania rule.

Judgment is rendered accordingly, and the cause is remanded to the trial court for any further orders or decrees which may be necessary. In view of the nature of the litigation, all costs, including those incident to the appeal, are taxed to appellants.

COOPER, BROCK and DROWOTA, JJ., and DYER, Special Justice, concur.

### ORDER

HARBISON, Chief Justice.

A petition for rehearing has been filed on behalf of appellants. They request the

vested right, and by the definition I have given he has an unconditional right, to receive a pension when he terminates employment."

Court to modify its previous opinion and to hold that attainment of age sixty is a necessary condition for an employee having ten years creditable service to achieve such status that the pension plan could not be amended detrimentally to him. The Court held to the contrary in its original opinion and it does not interpret the Pennsylvania rule as urged by counsel. *See Harvey v. Allegheny County Retirement Board*, 392 Pa. 421, 141 A.2d 197 (1958); *McKenna v. Commonwealth of Pennsylvania, et al.*, 54 Pa.Cmwlth. 338, 421 A.2d 1236 (1980).

The petition for rehearing is denied at the cost of appellants.

COOPER, BROCK and DROWOTA, JJ., and DYER, Special Justice, concur.