RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0268p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

─────────────────────

JOHNNY H. FRAZIER; REUBEN K. SALTER; WILLIAM
A. MELHORN, JR.; JAMES G. GASTON,

　　　　　*Plaintiffs-Appellants*,

　　　*v.*

CITY OF CHATTANOOGA, TENNESSEE;
CHATTANOOGA FIRE AND POLICE PENSION FUND,

　　　　　*Defendants-Appellees*.

No. 15-6405

─────────────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:14-cv-00128—Curtis L. Collier, District Judge.

Argued: September 27, 2016

Decided and Filed: November 3, 2016

Before: ROGERS, SUTTON, and COOK, Circuit Judges.

─────────────────────

### COUNSEL

**ARGUED:** Michael E. Richardson, TIDWELL, IZELL & RICHARDSON, Chattanooga, Tennessee, for Appellants. Zachary H. Greene, MILLER & MARTIN PLLC, Chattanooga, Tennessee, for Appellees. **ON BRIEF:** Michael E. Richardson, TIDWELL, IZELL & RICHARDSON, Chattanooga, Tennessee, for Appellants. Zachary H. Greene, W. Scott Parrish, David M. Barnes, MILLER & MARTIN PLLC, Chattanooga, Tennessee, for Appellee City of Chattanooga. Cameron S. Hill, William E. Robinson, CALDWELL & BERKOWITZ, PC, Chattanooga, Tennessee, for Appellee Chattanooga Fire and Police Pension Fund.

1

---

**OPINION**

---

ROGERS, Circuit Judge.   The City of Chattanooga amended the cost-of-living adjustment in its Fire and Police Pension Fund in 2000 to create a fixed three-percent annual increase in retirement benefits.  The city amended the COLA again in 2014 to a lower, variable annual increase.  Four Fund participants—Johnny Frazier, Reuben Salter, William Melhorn, Jr., and James Gaston—challenged the 2014 amendment under the Contract Clause of the United States Constitution, claiming a right to the fixed three-percent COLA.  The district court held that the retirees have no such right and granted the defendants'—the City's and the Fund's—motion for summary judgment.   The district court correctly concluded that there is no unmistakable evidence of the city's intent to be bound to the fixed COLA, because the COLA is neither vested nor accrued within the meaning of the City Code.

Chattanooga created the Fire and Police Pension Fund (the Fund) in 1949.  S.B. 346, 1949 Leg. (Tenn. 1949).  The pension plan is codified in §§ 2-400 to 2-425 of the Chattanooga City Code.  Chattanooga, Tenn., Code §§ 2-400 to 425 (2016) [hereinafter Code].  The plan is structured so that a participant's interest in future benefits vests after ten years of service.  *Id.* § 2-415.  At that point, the participant has the right either to a full refund of her contributions or to a deferred vested retirement benefit upon turning fifty-five.  *Id.*  Then, after twenty-five years of service, the participant becomes entitled to an annual service retirement pension, calculated under § 2-411.  *Id.* § 2-411.  Frazier retired in 1999, Gaston in 2012, Melhorn in 2008, and Salter in 2000.

The city added a cost-of-living adjustment (COLA) to the pension plan in 1980.  Chattanooga, Tenn., Ordinance 7714 (Aug. 19, 1980).  The original COLA was tied to the Consumer Price Index (CPI), with a zero-percent minimum and a three-percent maximum annual increase.  *Id.*  Since 1980, the city has amended the COLA four times—in 1986, 1992, 2000, and 2014.  This case involves the 2000 and 2014 amendments.  In 2000, the city created a fixed three-percent COLA.  *Id.* Ordinance 11012 (May 9, 2000).  The COLA was codified in § 2-417: "The benefits payable to retired members or any of their survivors or beneficiaries shall be

increased each January 1, following the first twelve (12) months of benefit, by three percent (3%)." Code § 2-417 (2013). The retirees claim that they, as plan participants, are entitled to this fixed three-percent COLA.

In 2014, the city adopted Ordinance 12813 in response to a massive funding crisis. *See* Chattanooga, Tenn., Ordinance 12813 (Mar. 11, 2014). The Ordinance created a lower, variable COLA. *Id.* When the Fund is less than eighty-percent funded, the COLA will increase benefits annually, on average, one-and-a-half percent, with those receiving higher pension benefits getting a lower increase and a one-percent minimum, and those receiving lower pension benefits getting a higher increase and a two-percent maximum. *Id.* When the Fund is at least eighty-percent funded, the COLA is tied to the CPI with a three-percent maximum increase, as it was before the 2000 amendment. *Id.*

The retirees sued the City and the Fund in state court, seeking a declaratory judgment and a permanent injunction against Ordinance 12813's COLA amendment. The complaint asserted various constitutional claims, including the Contract Clause claim that is at issue on this appeal. After the defendants removed the case to federal court, they moved for summary judgment. The district court granted the motions for summary judgment, holding that the Contract Clause claim failed on the merits and that the retirees had abandoned the other claims. *Frazier v. City of Chattanooga*, 151 F. Supp. 3d 830, 838 (E.D. Tenn. 2015). On the Contract Clause claim, the court held that the retirees had no contractual right to the fixed three-percent COLA. *Id.* The court recognized that the City Code only expresses an intent to be bound to vested, accrued financial benefits and concluded that the fixed COLA was neither vested nor accrued. *Id.* at 836–37. The retirees challenge that conclusion on this appeal.

The retirees do not have a contractual right to the fixed three-percent COLA, because the City Code does not bind the Fund to the fixed COLA. The Contract Clause prohibits states from passing any law impairing contract obligations. U.S. Const. art. I, § 10. Contract Clause analysis begins by asking whether a contractual relationship exists, *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992), which in the employee-benefit context means a contractual agreement regarding the specific terms at issue. The retirees' challenge does not survive beyond this first element. Generally, a statute merely expresses current government policy, and future

legislatures are free to change that policy. *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465–66 (1985). "[A]bsent some clear indication that the legislature intends to bind itself contractually," a statute does not create a contractual relationship. *Id.* Thus, the retirees "have the burden of showing that the [City Code] contains an *unmistakable* promise precluding the [city] from exercising its sovereign power to reduce the extent of their future COLA increases." *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 601 (6th Cir. 2016) (emphasis added).

The City Code does not unmistakably bind the Fund to the fixed three-percent COLA. Under § 2-411(d), the city may amend the pension plan, "provided that such amendment shall not in any way decrease any vested financial benefits accrued by any participant or beneficiary." Code § 2-411(d) (2016). Through § 2-411(d), the city expresses an intent to be bound only to vested, accrued financial benefits. Otherwise, subject only to § 2-411(d)'s other limitations, the city may freely amend the pension provisions.[1] The retirees do not have a contractual entitlement to the fixed COLA, even assuming it is a financial benefit within the meaning of the City Code, because the COLA is neither vested nor accrued.

The COLA is not a *vested* financial benefit, because the city did not include it in the pension plan's vesting provision. In *Puckett v. Lexington-Fayette Urban County Government*, a recent Contract Clause case, we evaluated whether retirees have a contractual right to a particular COLA under Kentucky's public pension plan. *See Puckett*, 833 F.3d 590. In rejecting the Contract Clause claim, we noted that the only mention of a vested interest in Kentucky's pension scheme did not include the COLA. *Id.* at 601. Similarly here, the City Code contains one vesting provision, § 2-415. After ten years of service, § 2-415 gives a participant the right either to a full refund of her contributions or to retirement benefits upon turning fifty-five. Code § 2-415 (2016). As in *Puckett*, § 2-415 does not mention the COLA, and no other City Code language makes the COLA a vested interest. In particular, the mandatory "shall be increased" in § 2-417 does not mean the COLA is vested. *See id.* § 2-417 (2013). We have previously recognized that, in this context, "shall" only imposes a duty on government officials to apply the

---

[1]Section 2-411(d) also provides that amendments must be "[]consistent with sound actuarial principles, methods, and actuarial assumptions." Code § 2-411(d) (2016). On appeal, the retirees do not challenge Ordinance 12813 as actuarially unsound.

COLA each year *until the legislature amends it.  Duncan v. Muzyn*, 833 F.3d 567, 583 (6th Cir. 2016).  "Shall" therefore removed the Fund's discretion in applying the three-percent COLA, but did not remove the City Council's power to amend the COLA.  There is thus no evidence in the City Code, let alone unmistakable evidence, that the fixed three-percent COLA is a vested benefit.

Furthermore, the COLA is not an *accrued* financial benefit.  "Accrue" can mean: "[t]o come to one as a gain, addition, or increment"; "[t]o increase, accumulate, or come about as a result of growth"; or "[t]o come into existence as a claim that is legally enforceable." *American Heritage Dictionary of the English Language* 12 (4th ed. 2000).  The district court essentially adopted the last definition, which is the most common and natural use of the term, *see Gabelli v. SEC*, 133 S. Ct. 1216, 1220–21 (2013).  The COLA is not an enforceable right until January 1 of each year, when § 2-417 instructs city officials to increase pension benefits.  *See* Code § 2-417 (2013).  Thus, future increases pursuant to the fixed COLA had not "accrued" as of July 1, 2014, when Ordinance 12813 took effect.  The retirees therefore cannot claim a contractual right to these future adjustments.

The retirees' alternative definition of accrued, as "a fixed and calculable amount payable in future," comports with no recognized definition of "accrue."  The fact that the city, in evaluating the financial burden of the COLA, hired a consultant who was able to calculate the financial cost of the three-percent annual COLAs once they accrue obviously does not mean that the COLAs have accrued.  Simply being able to calculate the present value of future benefits can hardly mean that the benefits have accrued.  If it did, then virtually all future benefits, if unchanged and calculable, have "accrued."  Such a definition would give no content whatsoever to the "accrued" requirement in this case.  More particularly, under the retirees' definition, § 2-411(d) removes the city's power to amend the COLA from fixed to variable, as it did in 2014, but allows the city to amend the COLA from variable to fixed, as it did in 2000.  Under this interpretation, once the city enacted the three-percent COLA, it set the fixed rate in stone.  However, as we have previously recognized, this interpretation reduces the COLA's effectiveness: "Because a COLA is meant to minimize the effect of inflation, it does not make sense that the legislature would bind itself to a fixed COLA . . . .  It makes more sense that the

legislature be able to adjust the COLA rate based on changes in inflation over time." *Puckett*, 833 F.3d at 604. Reading "accrued" to mean "enforceable" thus comports with the word's plain meaning, avoids redundancy, and furthers the COLA's purpose within the pension scheme.

Under the City Code's plain language, the retirees are not entitled to the fixed three-percent COLA, because the COLA is neither vested nor accrued. *Blackwell v. Quarterly County Court of Shelby County*, 622 S.W.2d 535 (Tenn. 1981), does not change this result. In *Blackwell*, the Tennessee Supreme Court established that a "public employer [may] make reasonable modifications in an existing [pension] plan if necessary to create or safeguard actuarial stability, provided that no then accrued or vested rights of members or beneficiaries are thereby impaired." *Id.* at 541. The court held that a reduction in plan participants' base benefits cannot constitutionally be applied to employees whose interests have vested after ten years of creditable service. *See id.* at 543. Though a state supreme court's interpretation of a local pension plan can be instructive to a federal court's Contract Clause analysis, *Romein*, 503 U.S. at 187, *Blackwell* is unhelpful here because it does not address whether a COLA is a vested benefit under Tennessee law. Furthermore, even if the case were controlling, the Tennessee Supreme Court's holding in *Blackwell* does not support the retirees' Contract Clause claim. *Blackwell* holds that a public employee remains entitled to pension benefits as they stood when the employee's interests vested. However, the retirees in this case do not claim they are entitled to the COLA as it existed when their interests vested. Assuming each retiree's interests vested ten years after he became employed by the city—pursuant to § 2-415—each vested before the 2000 amendment created a fixed three-percent COLA.[2] *Blackwell* is silent on participants' right to an adjustment to base benefits enacted after their interests vested. The case is therefore distinguishable.

Furthermore, the retirees' arguments gain little from the explicitly nonbinding nature of an entirely different provision. Under the Fund's Deferred Retirement Option Provision (DROP), a participant may elect to receive a single lump-sum retirement benefit as an alternative to periodic payments. Code § 2-422 (2016). Section 2-422(e) provides that "[t]he DROP may be discontinued or modified at any time." *Id.* The fact that § 2-417 does not include a similar

---

[2]Frazier began his public employment in 1974, Gaston in 1987, Melhorn in 1980, and Salter in 1971.

modification clause for the COLA does not indicate by negative inference that the city intended to create a contractual right when it enacted the fixed three-percent COLA in 2000. Indeed, the fact that the city had previously amended the COLA to plan beneficiaries' detriment twice before the 2000 amendment weighs against this argument.[3] The original, 1980 COLA provision did not contain a specific amendment clause. Ordinance 7714. Thus, the city amended the COLA in 1986 and 1992 without relying on such a clause. These previous amendments indicate that the city did not intend, merely by leaving out a specific amendment clause, to bind itself to the fixed COLA. Additionally, this court rejected a similar negative-inference argument in *Puckett* as inconsistent with the unmistakability doctrine. *See* 833 F.3d at 602–03. Thus, even if this negative inference were evidence of the city's intent to be bound, it would not be enough to unmistakably demonstrate that § 2-417 creates a contractual relationship.

The fact that the Fund described the fixed three-percent COLA as "guaranteed" when enacting the 2000 amendment also does not prove that the city intended to be bound to the fixed COLA. A pamphlet from the Fund entitled "Explanation of changes" stated: "A guaranteed annual 3% cost-of-living adjustment (COLA) will be given to all retirees and beneficiaries, regardless of age." This language could be interpreted as merely guaranteeing a three-percent COLA—rather than a variable or discretionary COLA—to pension participants only while the fixed COLA was in place. Additionally, this lone extrinsic evidence of legislative intent does not overcome the unambiguous Code language, under which the fixed COLA is not a contractual right because it is not a vested, accrued financial benefit within the meaning of § 2-411(d).

The judgment of the district court is affirmed.

---

[3]The 1986 amendment restricted the COLA to participants over fifty-five. Chattanooga, Tenn., Ordinance 8688 (Aug. 19, 1986). The 1992 amendment added a one-year waiting period after retirement before the COLA took effect. *Id.* Ordinance 9778 (Aug. 18, 1992).