RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0011p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BOBBY DODD,

          *Plaintiff-Appellant,*

    *v.*

CITY OF CHATTANOOGA, TENNESSEE; CHATTANOOGA FIRE AND POLICE PENSION FUND,

          *Defendants-Appellees.*

No. 16-5470

Appeal from the United States District Court for
the Eastern District of Tennessee at Chattanooga.
No. 1:14-cv-00358—Harry S. Mattice Jr., District Judge.

Argued: November 30, 2016

Decided and Filed: January 18, 2017

Before: NORRIS, GIBBONS, and ROGERS, Circuit Judges.

_____

### COUNSEL

**ARGUED:** William Gerald Tidwell, Jr., TIDWELL, IZELL & RICHARDSON, Chattanooga, Tennessee, for Appellant. Zachary H. Greene, MILLER & MARTIN PLLC, Chattanooga, Tennessee, for Appellee City of Chattanooga. Cameron S. Hill, BAKER DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Chattanooga, Tennessee, for Appellee Chattanooga Fire and Police Pension Fund. **ON BRIEF:** William Gerald Tidwell, Jr., TIDWELL, IZELL & RICHARDSON, Chattanooga, Tennessee, for Appellant. Zachary H. Greene, W. Scott Parrish, MILLER & MARTIN PLLC, Chattanooga, Tennessee, for Appellee City of Chattanooga. Cameron S. Hill, William E. Robinson, BAKER DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Chattanooga, Tennessee, for Appellee Chattanooga Fire and Police Pension Fund.

---

**OPINION**

---

ROGERS, Circuit Judge.  This case arises out of a 2012 amendment to the law governing Chattanooga's Fire and Police Pension Fund.  Before 2013, a Fund member's surviving spouse could receive benefits after the member died without incurring a proportional reduction in the member's lifetime benefits.  In 2012, the City of Chattanooga removed this "default death benefit" for members who were not eligible to retire as of January 1, 2013.  Bobby Dodd was not eligible to retire on that date and therefore opted for a five-percent reduction in current, lifetime benefits so that his wife could receive an additional benefit upon his death.  Because Dodd would not have incurred this five-percent reduction prior to the 2012 amendment, he sued the City and the Fund, asserting claims under the federal Contract Clause, Due Process Clause, and Takings Clause, as well as Tennessee's Law of the Land Clause.  Dodd also argued that the 2012 amendment was not validly enacted under local law.  The district court granted the City's and the Fund's motions for summary judgment on all claims, which Dodd now appeals.  Because Dodd does not have a contract or property right to the default death benefit, his constitutional claims fail.  Dodd's challenge to the validity of the amendment's enactment is also without merit.

I.

Chattanooga's fire and police pension plan is codified in §§ 2-400 to 2-425 of the Chattanooga City Code.  Under the plan, a member's interest in future pension benefits vests after ten years of active service.  Chattanooga, Tenn., Code § 2-415 [hereinafter Code].  At that point, the member has the right to receive either a full refund of his contributions or a deferred vested retirement benefit upon turning fifty-five.  *Id.*  Then, after twenty-five years of active service, the member becomes entitled to an annual Service Retirement Pension under § 2-411.  The pension benefit is calculated, pursuant to § 2-411(a), based on the member's years of active service and a percentage of his average pay.

Typically, a member's retirement benefit takes the form of a single-life annuity paid out in monthly installments.  However, a member may elect a "Joint and Survivor Option," which

spreads the annuity out over two lives, as an alternative under § 2-418. There are various alternative options in § 2-418, but only Option D is relevant to this appeal. Under Option D, a member receives "[a] decreased retirement benefit payable . . . for life," which continues after the member's death to a surviving beneficiary, who receives fifty percent of what the member received during his lifetime. Code § 2-418(1). When a member selects Option D, he ends up receiving the actuarial equivalent of a single-life annuity. *Id.* However, the monthly pension payments during the member's lifetime are reduced by five percent to account for the funds paid to the member's beneficiary after the member dies.

In a separate section, the pension plan provides for a "death benefit." Before the 2012 amendment at issue in this case, § 2-411(c) provided:

> Upon the death of any member employed on November 3, 1992, who is retired under the provisions of this Section, or upon the death of such member prior to retirement, but eligible for benefits under this Section, there shall be paid to said member's beneficiary a death benefit of $10,000.00, and the benefits under Section 2-418, and the surviving spouse shall be paid the sum of $500.00 per month until death if said spouse is not a beneficiary under one of the options listed in Section 2-418. **If the member has not elected any option prior to his or her death, a benefit shall be payable to the deceased's surviving spouse, if any, as though he or she had elected Option D., Section 2-418.**

Code § 2-411(c) (2003) (emphasis added). Under this provision, if a member was employed by the City on November 3, 1992, and had elected a Joint and Survivor option, upon the member's death his beneficiary would receive whatever benefits the beneficiary was entitled to under the member's § 2-418 election. Pursuant to the boldfaced text, if the member did not make an election under § 2-418, his surviving spouse, if any, would still receive benefits after the member died as if the member had elected Option D. This is the "default death benefit." As the district court explained, the default death benefit created a "loophole by which a retiree could receive the full amount of his/her pension in the form of a single life annuity, then have his/her spouse receive a generous death benefit paid in monthly installments, rather than electing a Joint and Survivor option," which would have decreased the retiree's lifetime payments.

In response to a substantial financial crisis following the 2008 recession, the City amended the pension plan in 2012 through Ordinance 12674. *See* Chattanooga, Tenn.,

Ordinance 12674 (Dec. 11, 2012) [hereinafter Ordinance 12674]. The ordinance eliminated the default death benefit for plan participants who were not eligible to retire as of January 1, 2013, by amending § 2-411(c) to read:

> Effective January 1, 2013, upon the death of such member who is eligible for benefits under this Section, there shall be paid to said member's beneficiary a death benefit of $10,000.00, and the benefits, if any, elected by the member under Section 2-418. If the member has not elected any option prior to his or her death, a benefit shall be payable to the deceased's surviving spouse, if any, as though he or she had elected Option D., Section 2-418. **Notwithstanding the foregoing, if a member who is employed on November 3, 1992, but is not eligible for benefits under this Section on January 1, 2013, or is employed after November 3, 1992, shall die before retirement and after reaching the conditions to be eligible for benefits under this Section or shall die after retirement, there shall be paid to his or her beneficiary or beneficiaries the benefit of $10,000.00 and such benefits elected under Section 2-418.**

Ordinance 12674 (emphasis added). Under the amended § 2-411(c), a member who becomes eligible to retire after January 1, 2013, must select an option under § 2-418 for the member's surviving spouse to receive payments after the member's death. The benefits are no longer automatic; a member cannot receive the death benefits without proportionally reducing her lifetime payments.

Dodd joined the Chattanooga Police Department on June 6, 1986, and retired as Chief of Police on December 31, 2013, after twenty-five-and-a-half years of service. Prior to the 2012 amendment, Dodd was eligible for the default death benefit, as he was employed in the police force on November 3, 1992. After the 2012 amendment, however, Dodd is no longer eligible for the default death benefit, as he was not eligible to retire until June of 2013—after January 1, 2013. Dodd learned of the change on December 20, 2012, while completing his retirement paperwork, and accordingly elected Joint and Survivor Option D. Because the 2012 amendment forced Dodd to elect Option D for his spouse to actually receive benefits upon Dodd's death, his current monthly pension has been reduced by five percent—from $6,695.64 to $6,360.86.

Dodd sued the City and the Fund over Ordinance 12674's elimination of the default death benefit, asserting claims under the Contract Clause, Due Process Clause, and Takings Clause of the U.S. Constitution, as well as the Law of the Land Clause of the Tennessee Constitution.

Dodd also claimed that Ordinance 12674 was not validly enacted under Chattanooga law because the City Council passed it after two readings, *see* Ordinance 12674 p. 5, whereas the pension plan required three. Code § 2-411(d) reads: "The City Council . . . may, by ordinance, passed on three separate readings, amend any section of" the pension plan.[1] In contrast, Chattanooga's Charter provides that "[n]o ordinance shall be valid unless passed on two (2) separate readings." Chattanooga, Tenn., Charter § 11.2 [hereinafter Charter]. Previously, the Charter provided for three readings, but the City amended the provision to two readings in 2004. *See* Chattanooga, Tenn., Ordinance 11590 (Aug. 3, 2004) [hereinafter Ordinance 11590]. While amending the Charter from requiring three readings to requiring two, the City also declared "[t]hat all laws constituting the present Charter of the City of Chattanooga, not in conflict with this amendatory home rule ordinance, be and the same are continued in full force and effect, and all laws or parts of laws in conflict therewith are hereby repealed." *Id.* sec. 2. Despite this declaration, the pension plan still requires—on its face—the City Council to read an ordinance that amends the plan three times before adopting it. When the City passed Ordinance 12674— the law challenged in this case—this three-readings requirement existed side-by-side with the two-readings requirement in the City Charter.[2]

Below, the City and the Fund argued that, because the "all laws or parts of laws in conflict therewith are hereby repealed" language effectively repealed the pension plan's three-readings requirement, only two readings were required to amend the plan through Ordinance 12674. Dodd responded that a separate City Charter provision, § 11.12, prevented the City from repealing the pension plan's three-readings requirement through the ordinance that amended the Charter from requiring three readings to requiring two. The district court rejected Dodd's argument. The court reasoned that, because the City Charter controls over conflicting ordinances, the Charter's two-readings requirement controlled. The court held that, therefore, Ordinance 12674 was validly enacted after only two readings.

---

[1]When the City passed Ordinance 12674, this provision was in the City Charter, not the Code. *See* Chattanooga, Tenn., Ordinance 11012 sec. 1, item 7 (May 9, 2000).

[2]Currently, a provision in the City Charter specific to the pension plan allows the City Council to amend the plan after only two readings. *See* Chattanooga, Tenn., Ordinance 12677 sec. 28 (Dec. 18, 2012). Because the provision was not enacted until after the City passed Ordinance 12674, however, presumably it is not relevant to Dodd's case. Furthermore, because none of the parties raises an argument on appeal about how this change affects Dodd's validity argument, we do not consider it.

The district court also rejected Dodd's constitutional arguments, starting with his Contract Clause claim. The court held that Dodd's Contract Clause claim failed as a matter of law because he had no contract right to the default death benefit. The court reasoned that the City Code "unambiguously states that employees only have a contractual interest in vested and accrued financial benefits." The court further noted that, under the former Code, the default death benefit did not vest or accrue until a member reached twenty-five years of service. Because Dodd had not completed twenty-five years of service when the City amended the default death benefit, he had no vested, accrued interest in the benefit, and thus no contract right to it. The district court rejected Dodd's Due Process Clause, Law of the Land Clause, and Takings Clause claims along the same lines. The court held that, even if Dodd was entitled to the default death benefit, he would not have a cognizable substantive due process claim. Furthermore, the court reasoned that Dodd had no constitutionally protected property interest in the default death benefit to support his Takings Clause and procedural due process claims. Accordingly, the court granted the City's and the Fund's motions for summary judgment, which Dodd now appeals.

II.

Dodd's Contract Clause claim fails because he had no contract right to the default death benefit when the City amended the benefit in 2012. *Frazier v. City of Chattanooga, Tennessee*, 841 F.3d 433 (6th Cir. 2016), largely forecloses Dodd's claim. In *Frazier*, several members of Chattanooga's Fire and Police Pension Fund challenged a 2014 amendment to the plan that reduced retirees' annual cost-of-living adjustment. We held that, pursuant to Chattanooga Code § 2-411(d), the City expressed an intent to be bound only to—and thus pension-plan members can claim a contract right only to—vested, accrued financial benefits. *See id.* at 436. Because the cost-of-living adjustment was neither vested nor accrued, the members' Contract Clause claim failed. *Id.* at 438. So too here; because the default death benefit is neither vested nor accrued, Dodd cannot claim contractual entitlement to it.

As a preliminary matter, § 2-411(d)'s amending language applies to Dodd, even though it was not part of the plan until fourteen years after Dodd joined the police force. From the time Dodd entered the force in 1986 until § 2-411(d) was amended in 2000, the pension plan's

amending language only mentioned increasing benefits.  *See* Chattanooga, Tenn., Ordinance 9778 sec. 1, item 3 (Aug. 18, 1992).  In contrast, the current language in § 2-411(d) reads:

> The City Council, City of Chattanooga . . . may, by ordinance, passed on three separate readings, amend any section of the [pension plan]; provided that such amendment is not inconsistent with sound actuarial principles, methods, and actuarial assumptions and further provided that such amendment shall not in any way decrease any vested financial benefits accrued by any participant or beneficiary of the . . . Fund.

Chattanooga, Tenn., Ordinance 11012 sec. 1, item 7 (May 9, 2000) [hereinafter Ordinance 11012].  It does not automatically follow that, because the pension plan did not specifically allow the City to decrease benefits until fourteen years into Dodd's service, the current language that allows the City to do so cannot apply to him.  This premise ignores the fundamental assumption in Contract Clause analysis that legislation merely expresses current government policy—and future legislatures are free to change that policy—rather than creating contractual obligations.  *See Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465–66 (1985).  Under this rule, because the plan did not specifically *limit* the City's ability to reduce pension benefits before 2000, the City likely could have freely amended the plan until it added the current § 2-411(d) language.  Furthermore, in Tennessee a pension plan is not "'frozen' against detrimental changes or modifications the moment an employee begins to participate in it."  *Blackwell v. Quarterly Cty. Court of Shelby Cty.*, 622 S.W.2d 535, 541 (Tenn. 1981).  The plan was similarly not set in stone the moment Dodd's right to some future benefits vested upon reaching ten years of service.  Section 2-411(d), along with its limits on decreasing vested, accrued financial benefits, therefore applies to Dodd.

Dodd's interest in the default death benefit had not vested before the City removed the benefit in 2012.  The pension plan's express vesting provision is § 2-415, titled "Termination of employment after ten years of service; vesting; death after termination."  Code § 2-415.  As we recognized in *Frazier*, "[a]fter ten years of service, § 2-415 gives a participant the right either to a full refund of her contributions or to retirement benefits upon turning fifty-five."  *Frazier*, 841 F.3d at 437.  Just because Dodd's interest in some future benefits vested after ten years of service does not mean that Dodd became entitled to the default death benefit when he hit ten

years.  Section 2-415 lists which interests vest after ten years of service, and those interests do not include the default death benefit.  Dodd thus does not have a vested interest in the benefit.

Furthermore, Dodd's interest in the default death benefit had not accrued before the 2012 amendment.  In *Frazier*, we defined "accrued," as the term is used in Code § 2-411(d), to mean "'[t]o come into existence as a claim that is legally enforceable.'"  *Id.* (alteration in original) (quoting *American Heritage Dictionary of the English Language* 12 (4th ed. 2000)).  Section 2-411(c) requires a member to be "retired under the provisions of this Section [or] eligible for benefits under this Section" before the member is entitled to the death benefit.  Code § 2-411(c).  That is, the member must have completed twenty-five years of active service.  Thus, Dodd's right to the default death benefit would not have become legally enforceable until he reached twenty-five years of service.  Dodd did not hit twenty-five years until June 2013, after the City passed Ordinance 12674 in December of 2012.  Dodd therefore did not have an accrued interest in the default death benefit before the City made him ineligible for the benefit.

Because Dodd's interest in the default death benefit was neither vested nor accrued when the City passed Ordinance 12674, Dodd is not contractually entitled to the benefit.  *Blackwell v. The Quarterly County Court of Shelby County*, 622 S.W.2d 535 (Tenn. 1981), does not change this result.  In *Blackwell*, the Tennessee Supreme Court "held that a reduction in [pension] plan participants' base benefits cannot constitutionally be applied to employees whose interests have vested after ten years of creditable service."  *Frazier*, 841 F.3d at 438.  In *Frazier*, we noted that *Blackwell* was unhelpful to determining whether the pension plan's cost-of-living adjustment was a vested, accrued financial benefit, because *Blackwell* only dealt with decreasing base retirement benefits.  *See id.*  The 2012 amendment to the default death benefit similarly did not adjust Dodd's base benefit—even though Dodd's lifetime payments were reduced when he elected Option D, he and his wife will ultimately receive the actuarial equivalent of a single-life annuity.  So *Blackwell* is also inapposite here.

Dodd's alternative constitutional arguments fail along with his Contract Clause claim.**³**
First, to the extent Dodd relies on a substantive due process theory, he has no cognizable claim.
We have reasoned that "[s]tate-created rights such as [the] contractual right to promotion do not
rise to the level of 'fundamental' interests protected by substantive due process." *Charles v.
Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990). This rationale applies equally to Dodd's interest
in the default death benefit. Dodd's due process claim is cognizable, if at all, under procedural
due process, not substantive due process. Second, Dodd's procedural due process and Takings
Clause theories fail because he does not have a constitutionally protected property interest in the
default death benefit. "[T]o have a property interest in a contractual benefit, a person must 'have
a legitimate claim of entitlement to it.'" *City of Pontiac Retired Emps. Ass'n v. Schimmel*,
751 F.3d 427, 432 (6th Cir. 2014) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564,
577 (1972)). If the state has total discretion to award or remove a benefit, a person cannot claim
entitlement to the benefit. *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 605
(6th Cir. 2016). As discussed in the Contract Clause analysis above, in 2012 the City had
discretion to remove the default death benefit from those, like Dodd, who were not yet eligible to
retire. Dodd therefore has no protected property interest in the benefit and no viable procedural
due process or Takings Clause claim.

## III.

Dodd's only argument on appeal that Ordinance 12674 was not validly enacted—that
City Charter § 11.12 prevented the City from repealing the three-readings requirement—is also
without merit. Charter § 11.12 reads:

> The City of Chattanooga, in the preparation of any digest of its local laws
> and ordinances is hereby empowered and authorized to codify, revise and collect
> in the form of a Code all ordinances of a general nature, and in so doing, the city
> council shall have full power and authority without special ordinance referring to
> each ordinance amended, altered, repealed or modified, to amend, alter, repeal or
> modify any ordinance of a general nature other than contract ordinances, franchise
> ordinances, ordinances relating to bond issues or other ordinances in or by which

---

**³**Because Tennessee courts interpret the state's Law of the Land Clause as synonymous with the federal
Due Process Clause, *Daugherty v. State*, 393 S.W.2d 739, 743 (Tenn. 1965), we address the two together.

the city has assumed such contract obligations as are protected by the Constitution of the United States or the State of Tennessee.

Charter § 11.12. Dodd argues on appeal that the City could not repeal § 2-411(d)'s three-readings requirement through the ordinance that purported to repeal it because the ordinance was a "general ordinance," whereas § 11.12 requires a "special ordinance," one specifically referring to the ordinances it modifies, to amend the pension plan.

However, Dodd's argument ignores the opening clause of Charter § 11.12. The provision's limitations only apply, if at all, when the City modifies the pension plan through its *codification power*. Yet the City did not repeal the three-readings requirement through its codification power. The relevant ordinance's preamble states that it was passed pursuant to Article XI, Section 9 of the Tennessee State Constitution, which is the home-rule provision that gives the City the power to amend its charter. *See* Ordinance 11590 pmbl. There is no indication in the ordinance—and Dodd has presented no argument to this court—that the City was legislating pursuant to its codification power, rather than this general power to amend the Charter. Thus, Charter § 11.12's limitations did not apply when the City repealed the three-readings requirement. Because Dodd presents no other argument that Ordinance 12674 was not validly enacted, his challenge is unsuccessful.

## IV.

The judgment of the district court is affirmed.