RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0265p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────────

BRADLEY M. PETERSON, Ph.D.,

　　　　　　　*Plaintiff-Appellant*,

　　*v.*

KRISTINA M. JOHNSON, Ph.D., in her individual and official capacities; BRUCE A. MCPHERON, Ph.D., in his individual capacity only; MELISSA L. GILLIAM, M.D., M.P.H., in her official capacity only,

　　　　　　　*Defendants-Appellees*.

No. 23-3338

───────────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:22-cv-00276—Edmund A. Sargus, Jr., District Judge.

Decided and Filed:  December 5, 2023

Before:  MOORE, McKEAGUE, and KETHLEDGE, Circuit Judges.

───────────────────

**COUNSEL**

**ON BRIEF:**  Tracy L. Turner, ROSENBERG & BALL CO., LPA, Granville, Ohio, for Appellant.  Benjamin M. Flowers, Michael J. Hendershot, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

—————————

## OPINION

—————————

KAREN NELSON MOORE, Circuit Judge.  Bradley Peterson sued Kristina Johnson and Bruce McPheron[1] pursuant to 42 U.S.C. § 1983 alleging that Johnson and McPheron violated his procedural-due-process rights.  Peterson alleges that he had a property interest in his status as an emeritus professor at the Ohio State University ("Ohio State") and that Johnson and McPheron deprived him of that status without adequate process.  The district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6), finding that Peterson's emeritus status was not a constitutionally protected property interest.  Peterson now appeals.  For the reasons explained below, we **AFFIRM** the district court.

## I.  BACKGROUND

Bradley Peterson joined Ohio State in 1979 and, by 1984, he was promoted to Associate Professor and granted tenure status.  R. 1 (Compl. ¶ 10) (Page ID #4).  Following his retirement on June 30, 2015, Peterson was granted emeritus status.  *Id.* ¶ 13 (Page ID #6).  Peterson then began working as a Distinguished Visiting Astronomer at the Space Telescope Science Institute, developing a study that would be presented to NASA and the National Academy of Sciences, conducting research, and writing the second edition of an astrophysics textbook.  *Id.* ¶¶ 14–15 (Page ID #6).  In October 2018, Peterson returned to Ohio State full-time with his emeritus status, but he continued much of his work for these other entities.  *Id.* ¶ 15 (Page ID #6–7).

In April 2020, three women filed a sexual-harassment complaint against Peterson.  *Id.* ¶ 18 (Page ID #7).  Ohio State investigated the complaint by conducting interviews of the women and any witnesses over the course of a few weeks.  *Id.* ¶ 29 (Page ID #11–12).  On April 27, 2020, after completing several interviews, Ohio State notified Peterson about the pending investigation.  *Id.*  Peterson denied the allegations in writing and was interviewed as part of the

———————————

[1]The district court subsequently substituted McPheron with Melissa Gilliam, who took over as Executive Vice President and Provost while the case was pending.  R. 27 (Dist. Ct. Order at 5) (Page ID #162).

investigation.  *Id.* ¶¶ 30–32 (Page ID #12).  During the interview, Peterson again denied the allegations, offered explanations for his alleged behavior, and stated that he had since adjusted his communication style.  *Id.* ¶ 32 (Page ID #12).  After Peterson was interviewed, a fourth woman submitted sexual-harassment allegations against him, but he was not given the opportunity to respond to her allegations.  *Id.* ¶ 35 (Page ID #13).  Peterson was also not notified that he could lose his emeritus status as a result of the investigation.  *Id.* ¶ 33 (Page ID #12).

At the conclusion of the investigation, Peterson alleges that Ohio State wrote a report that omitted or changed his testimony, excluded or failed to obtain exculpatory information, and misstated witness testimony.  *Id.* ¶¶ 38–40 (Page ID #14–17).  The report concluded that Peterson violated Ohio State's Sexual Misconduct Policy 1.15.  *Id.* ¶ 42 (Page ID #17).  On February 2, 2021, after receiving the report, Peterson contacted Ohio State to request a hearing prior to a final decision but did not receive a response.  *Id.* ¶¶ 42–43 (Page ID #17–18).

In May 2021, Kristina Johnson, President of Ohio State, recommended that Peterson's emeritus status be revoked based on the report, and the Board of Trustees accepted the recommendation.  *Id.* ¶¶ 4, 46–47 (Page ID #3, 18).  As a result of this, Peterson alleges that he was deprived of his emeritus status and all related benefits, his position at the Space Telescope Science Institute, his large Hubble Space Telescope science program, and his textbook contract with Cambridge University Press.  *Id.* ¶ 52 (Page ID #19).  Peterson also alleges that he suffered permanent reputational damage and loss of earnings.  *Id.*

On January 24, 2022, Peterson filed a one-count complaint alleging that Johnson and McPheron violated his right to procedural due process when they revoked his emeritus status.  R. 1 (Compl. ¶¶ 56–73) (Page ID #20–23).  The defendants moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  R. 7 (Mot. to Dismiss at 1) (Page ID #35).  The district court granted the motion to dismiss, finding that Peterson did not allege a constitutionally protected property interest because he was not entitled to his emeritus status and, even if he were, there was no meaningful change to his employment relationship with Ohio State.  R. 27 (Dist. Ct. Order at 5–9) (Page ID #162–66).  The district court dismissed the complaint without prejudice.  *Id.* at 10 (Page ID #167).

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's decision to grant a motion dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Gunasekera v. Irwin*, 551 F.3d 461, 465–66 (6th Cir. 2009). To survive a motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Procedural Due Process[2]

A State may not deprive persons of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1. To state a procedural-due-process claim, Peterson must establish "(1) that [he] ha[s] a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . . , (2) that [he] w[as] deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford [him] adequate procedural rights prior to depriving [him] of [his] protected interest." *Gunasekera*, 551 F.3d at 467 (alterations in original) (quoting *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002)).

Peterson alleges that he had a property right in his emeritus status and all of its "related benefits." R. 1 (Compl. ¶ 52) (Page ID #19). "Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "'[P]roperty' interests subject to procedural due process protection are not limited by a few rigid, technical forms," *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); instead, "[a] property interest can be created by a state statute, a formal

---

[2]Peterson argues that the district court improperly held him to a higher standard than is required under Federal Rule of Civil Procedure 12(b)(6). Appellant Br. at 15–16. Because we conclude on de novo review that Peterson has failed to state a claim for the reasons explained below, we need not address this argument.

contract, or a contract implied from the circumstances," as well as "mutual understandings between the parties," *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565, 567 (6th Cir. 2004).  To establish a property interest, Peterson must "have a legitimate claim of entitlement to it." *Med Corp.*, 296 F.3d at 409 (quoting *Roth*, 408 U.S. at 577).

Although employees may establish a property interest in continued employment in certain circumstances, *see, e.g.*, *Roth*, 408 U.S. at 578, Peterson's professional relationship with Ohio State does not fit cleanly into existing caselaw.  Peterson retired on June 30, 2015, and maintained a relationship with Ohio State as an emeritus professor.  R. 1 (Compl. ¶¶ 13, 15) (Page ID #6–7).  Once retired, however, Peterson was no longer considered a tenured faculty member.  Ohio Admin. Code § 3335-5-03(D) (stating that "[t]enure is lost . . . by retirement").  This is, therefore, not a case in which the employee was terminated.

In this Circuit, not all adverse employment decisions short of termination raise procedural-due-process questions.  *See Crosby v. Univ. of Ky.*, 863 F.3d 545, 552–53 (6th Cir. 2017) (stating that, without more, "tenured university professors d[o] not have a constitutionally protected property interest in administrative posts" (alteration in original) (quoting *Stringfield v. Graham*, 212 F. App'x 530, 538 (6th Cir. 2007) (per curiam)).  Instead, to establish a property interest in this context, "there must be a substantial, tangible harm and a material change to an employee's status."  *Samad v. Jenkins*, 845 F.2d 660, 662 (6th Cir. 1988).  Typically, we consider whether the employee lost pay or tangible benefits.  *See Jackson v. City of Columbus*, 194 F.3d 737, 749 (6th Cir. 1999) ("Because Jackson was neither terminated nor lost any pay or benefits, we find that he was not deprived of a constitutionally protected property interest."), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Gunasekera*, 551 F.3d at 468 (noting that, unlike *Jackson*, the plaintiff alleged that he lost a "summer salary research stipend" and benefits "such as a reduced teaching load").

Here, Peterson does not allege that he lost pay[3] or tangible benefits[4] from Ohio State when it revoked his emeritus status and, therefore, we reserve for another case whether such

---

[3]Peterson does allege that he lost pay and professional opportunities as a result of the revocation, R. 1 (Compl. ¶ 52) (Page ID #19), but he does not allege that these benefits were conferred by Ohio State and, therefore, this cannot form the basis of his property interest.  *See Paul v. Davis*, 424 U.S. 693, 710–11 (1976) (explaining that

allegations would be sufficient to establish that emeritus status is a constitutionally protected property interest. He also does not identify any aspect of Ohio State's policies that confer pay or tangible benefits based on emeritus status. Indeed, the Code suggests the opposite. At Ohio State, emeritus status is an honorific title that is different in type from tenure-track faculty and non-tenure-track faculty. Ohio Admin. Code § 3335-5-19(C) (defining emeritus faculty as "an honor given in recognition of sustained academic contributions to the university"). "Emeritus faculty, in keeping with the honorific nature of the title, are not expected to perform faculty duties . . . nor do they retain the specific powers of the faculty . . . ." Ohio Admin. Code § 3335-5-36(C). Emeritus faculty do not vote in Ohio State governance decisions and do not "participate in promotion and tenure matters[;]" however, they "may have such other privileges as individual academic units or the university may provide." *Id.* Thus, the relevant policies do not confer any specific tangible benefits.

Nonetheless, Peterson contends that his emeritus status is a constitutionally protected property interest because his "emeritus status was necessary to his scholarship and standing in the academic community." *Id.* ¶ 51 (Page ID #19). Specifically, Peterson alleges that "[b]ased on [Ohio State's] report and revocation of Dr. Peterson's emeritus status, the organizations with which Dr. Peterson had relationships with to perform research, writing, and other work ended their relationship with him." *Id.* This, however, amounts to claiming a property interest in his professional reputation, which is an interest that is "indistinguishable from [a] liberty interest claim based upon alleged injuries to [a plaintiff's] reputation." *Med Corp.*, 296 F.3d at 415. We

---

certain interests "attain . . . constitutional status by virtue of the fact that they have been initially recognized and protected by state law" and therefore, "the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status").

[4]In his reply brief, Peterson argues that, although he "was not teaching courses at [Ohio State] at the time his rights were revoked, he was using [Ohio State] facilities and resources for the research opportunities for which he alleged he was deprived, and emeritus faculty do at times teach courses for stipends." Reply Br. at 2–3. These facts, however, are not included in the complaint. The complaint does not state what Ohio State facilities and resources Peterson used and whether Ohio State retained discretion to revoke those resources. *Cf.* Ohio Admin. Code § 3335-5-36(C) (stating that emeritus professors "may have such other privileges as individual academic units or the university may provide"). Without more, we cannot determine whether these additional facts would be sufficient to state a claim. *See Phila. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (stating that the complaint must include "'either direct or inferential allegations respecting all material elements' necessary for recovery under a viable legal theory" (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275–76 (6th Cir. 2010))).

have previously "explain[ed] that before asserting" a liberty interest in "reputation, good name, honor, [or] integrity" a plaintiff is "required to show that he requested a name-clearing hearing and was denied that hearing." *Quinn v. Shirey*, 293 F.3d 315, 319, 322 (6th Cir. 2002). Peterson concedes that he has not requested a name-clearing hearing and, therefore, this benefit cannot form the basis of his procedural-due-process claim. Reply Br. at 2 ("[T]here is no dispute that Dr. Peterson did not request a name-clearing hearing and he has never requested such relief.").[5] Accordingly, we hold that Peterson has failed to state a claim because he has not adequately alleged a constitutionally protected property interest.

### III. CONCLUSION

We therefore **AFFIRM** the judgment of the district court.

---

[5]Peterson also argues that his emeritus status is constitutionally protected because its revocation "involved allegations of sexual misconduct" and findings of sexual misconduct have a profound effect on "a person's good name, reputation, honor, or integrity." Appellant Br. at 18–19 (quoting *Doe v. Miami Univ.*, 882 F.3d 579, 600 (6th Cir. 2018)). In this context—as opposed to student disciplinary decisions that deprived the student of access to the benefits of higher education in *Miami University*—the allegations of sexual misconduct amount to reputational harm and, therefore, fail for the same reasons outlined above.