NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0416n.06

Case No. 24-2124

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 08, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| JAMES HART; KRISTIN HART, | ) | |
| Plaintiffs-Appellants, | ) | |
|  | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
|  | ) | |
| TOWNSHIP OF PRESQUE ISLE, MICHIGAN, | ) | |
| Defendant-Appellee. | ) | |
|  | ) | O P I N I O N |
|  | ) | |

Before: BOGGS, McKEAGUE, and MATHIS, Circuit Judges.

**McKEAGUE, Circuit Judge.** In 2020, James and Kristin Hart began constructing a house in Presque Isle Township, along the shores of Lake Huron. One year later, Presque Isle Zoning Administrator Stephen Lang issued a stop-work order after neighbors claimed that the Harts' construction violated the Township's zoning ordinances. The neighbors sought review of the Harts' zoning permit with the Township's Zoning Board of Appeals. After a hearing, the Zoning Board revoked the Harts' permit because the Harts had not included appropriate scaled drawings in their permit application, as required by the Township's zoning ordinances. With the Township's help, the Harts eventually obtained a new permit and completed construction of their house. But because the permit ordeal delayed construction for several weeks, the Harts' builder left the job, and the Harts were unable to resume construction for another year. The Harts filed this lawsuit, alleging that the Township (1) violated their procedural-due-process rights by issuing the stop-

work order without providing notice or a pre-deprivation hearing, and (2) committed a taking without compensation, in violation of the Fifth Amendment. The district court granted the Township summary judgment on both claims. We **AFFIRM**.

## I.

In 2016, the Harts purchased a 0.65-acre plat adjacent to Lake Huron in Presque Isle Township, Michigan. Four years later, the Harts applied for a permit to construct a 2,500-square-foot home on the plat. Presque Isle zoning ordinances specify "that every application for a zoning permit for . . . construction" be accompanied by "dimensioned plats or plans drawn to scale[.]" Presque Isle Zoning Ordinance Article 26 § 4, R. 21-26 at PageID 499–500. Accordingly, the Harts attached a drawing to their application. But the drawing lacked several components required by the zoning ordinances, such as elevations and topographical features. Moreover, the ordinances also make it "illegal for the Zoning Administrator to issue any permits . . . until he has inspected such plans in detail, and finds them to be in conformance" with the ordinances. *Id.* § 3, R. 21-26 at PageID 499. Notwithstanding the application's deficiencies, Lang issued the permit in July 2020. The Harts commenced construction soon after.

At the beginning of the construction process, the Harts brought in many truckloads of fill-dirt and used them to raise the level of their lot, which resulted in elevating the level of their house in violation of the ordinance maximum height of 30 feet. The Harts also brought in dirt, cobblestones, and boulders to extend their lakefront footage and to build a pier with the rock and dirt. This resulted in changing the shoreline and the high-tide mark. The Harts' neighbors, Michael Beaulac and Mary Wolfe, who lived on the adjacent property, were upset and alleged that the Harts had cut down some of their trees and bulldozed a significant portion of the fill-dirt on to their lot. Beginning in August 2020 the neighbors repeatedly asked the Harts to remove the dirt and hired a

construction company to erect a fence but were told that such a fence could not withstand the pressure and instability of the fill from the Hart property. Meanwhile, the Harts did nothing, and the neighbors escalated the matter to the Township. The Harts eventually removed the dirt in early May 2021, after Lang issued a mid-May ultimatum.

But the neighbors were not satisfied.[1] In July 2021, they filed an appeal with the Presque Isle Zoning Board of Appeals, seeking review of Lang's decision to grant the Harts' permit. The neighbors stated that even though the Harts had applied for a permit to construct a 2,500-square-foot house, the Harts' three-story building comprised 12,000 square feet—several times larger than what was permitted. They alleged that the Harts' house exceeded the zoning ordinances' setback requirements and limitations on building height and number of stories. They further claimed that the Harts failed to attach detailed plans with their permit application. They asked the Zoning Board to ensure that the Harts' building complied with the zoning ordinances.

On July 13, 2021, pursuant to pre-existing zoning ordinances—which required a stay of all proceedings that were the subject of an appeal—Lang issued a stop-work order requiring the Harts to cease construction of their house.[2] Lang did not provide the Harts with any notice or conduct a hearing before issuing the order.

One month later, the Zoning Board held a special public hearing on the Harts' permit. The neighbors and other members of the public commented on how the Harts' construction allegedly violated the zoning ordinances' height and setback requirements, caused visual pollution, and destroyed the natural beauty of the area. Lang testified that the house violated the zoning

---

[1] In June 2021, the neighbors sued the Harts in state court for trespass, nuisance, and breach of restrictive covenants, claiming that the Harts were constructing the house without a valid permit. The case was dismissed after a three-day bench trial.

[2] Lang allowed the Harts to do limited work on the property to make it weathertight.

ordinances by exceeding the thirty-foot height limit. The Harts, represented by counsel, were allowed to present arguments. After deliberations, the Board revoked the Harts' permit because the Harts failed to include compliant scaled drawings with their permit application.[3] The Board noted that the Harts would be filing for a new permit.

Lang worked closely with the Harts to reissue a permit. Several days after the Board vacated the Harts' permit, they applied for a new permit; Lang responded that the renewed application did not have the required scaled drawings. The Harts submitted another application with the requisite drawings, and Lang issued a permit soon after.

In sum, the stop-work order was in effect for approximately seventy days. But because of the interruption and uncertainty caused by the order, the Harts' builder abandoned the project and refused to return. The Harts were unable to secure a new builder and continue construction of their home until January 2023.

The Harts sued the Township, alleging two claims of *Monell* liability under 42 U.S.C. § 1983. First, they claimed that the Township deprived them of procedural due process when it issued the stop-work order without prior notice or a pre-deprivation hearing. Second, they alleged that the Township violated the Fifth Amendment by effectuating a temporary taking for the duration of the stop-work order.

After discovery, the Harts moved for summary judgment on their procedural-due-process claim. The Township moved for summary judgment on both the due process claim and the takings claim. The court held that the Harts' procedural-due process-claim failed on several grounds: First,

---

[3] After the Board vacated the Harts' permit but before they received a new permit, Lang received a complaint regarding work being done on the Harts' property. Lang visited the property and found that the Harts were having a pump and pressure tank installed. Lang issued the Harts a citation for violating the stop-work order.

under Michigan law, the Harts did not have a vested right to construct their house because Lang had issued their permit contrary to the zoning ordinances. Next, the court held that even if the Harts had a vested right, the Township did not deprive them of that right because the stop-work order was only a temporary interference. And even then, any deprivation was mitigated by the fact that the Harts "admitted that they continued to work on their property for weeks" in violation of the stop-work order. R. 37 at PageID 949. Finally, the court explained that even if the Township deprived the Harts of a vested right to construct their house, the Township afforded them sufficient post-deprivation process through the Zoning Board hearing where the Harts were represented by counsel.

On the takings claim, the court stated that the factors set out in *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978), used to evaluate temporary regulatory takings weighed against the Harts. First, the Harts failed to identify how the loss of building time caused by the stop-work order had an economic impact on them. Next, the Harts also failed to show how the stop-work order interfered with any investment-backed expectations. Finally, the court held that the stop-work order was not excessively intrusive because, among other reasons, its duration was not long enough to constitute a Fifth Amendment taking.

Accordingly, the district court granted summary judgment to the Township on both the procedural-due-process and takings claims. This appeal followed.

**II.**

We review a grant of summary judgment de novo. *Puskas v. Delaware County*, 56 F.4th 1088, 1093 (6th Cir. 2023). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view all evidence and draw all reasonable inferences in the light

most favorable to the nonmoving party. *Palma v. Johns*, 27 F.4th 419, 427 (6th Cir. 2022). "We affirm a grant of summary judgment where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015) (cleaned up).

### III.

On appeal, the Harts claim that the district court erred by granting summary judgment to the Township. A plaintiff may hold a municipality "liable for the constitutional violations of their employees only where the municipality's policy or custom led to the violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 694–95 (1978)). However, there can be no liability without an underlying constitutional violation. *Id.* Therefore, the Harts must show that the Township violated their constitutional rights before they can establish *Monell* liability. Accordingly, we address whether the Township violated the Harts' Fourteenth Amendment right to procedural due process and whether it committed a Fifth Amendment taking, before tackling the Harts' *Monell* claims.

### A.

*Procedural Due Process.* The Harts ask this court to hold that, barring an emergency or other exigent circumstances, the Due Process Clause of the Constitution requires a township to hold a hearing before it issues a stop-work order. Oral Arg. at 25:30. But before invoking the Due Process Clause, the Harts must show that they had a valid property interest. They have not.

The Fourteenth Amendment's Due Process Clause provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend XIV. The Due Process Clause has both procedural and substantive components. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). Procedural due process requires the

government to provide "fair procedure" before depriving someone of life, liberty, or property. *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). To establish a procedural-due-process claim, parties must show that (1) they have "a life, liberty, or property interest requiring protection under the Due Process Clause;" (2) the government "[deprived them] of that interest;" and (3) the government carried out the deprivation "without adequate process." *Fields v. Henry County*, 701 F.3d 180, 185 (6th Cir. 2012).

"Property interests are not created by the Constitution." *Peterson v. Johnson*, 87 F.4th 833, 836 (6th Cir. 2023) (cleaned up); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Rather, "whether a person has a property interest is traditionally a question of state law." *EJS Props.*, 698 F.3d at 855 (internal quotation marks omitted). We must therefore turn to Michigan law to determine whether the Harts had a property interest.

As a protected property interest, the Harts claim that they acquired a "vested right" because they relied on the permit and completed significant construction on their house before Lang issued the stop-work order. Appellant Br. 17–18. "A vested right" is "an interest that the government is compelled to recognize and protect of which the holder could not be deprived without injustice." *City of Detroit v. Walker*, 520 N.W.2d 135, 143 (Mich. 1994) (citing *Cusick v. Feldpausch*, 243 N.W. 226 (Mich. 1932)). The existence of such a right is determined on a case-by-case basis. *Id.* Although the issuance of a permit itself does not create a vested right, *Dingeman Advert., Inc. v. Algoma Township*, 223 N.W.2d 689, 691 (Mich. 1975), it is still an "important factor in procuring" such a right, *Heath Township v. Sall*, 502 N.W.2d 627, 633 (Mich. 1993).

"[T]he test in each case as to whether a holder of a permit has acquired vested rights thereunder is, not whether he has spent much or little reliance upon it, but rather whether there has been any tangible change in the land itself by excavation and construction." *City of Lansing v.*

*Dawley*, 225 N.W. 500, 501 (Mich. 1929). In *Dawley*, the defendant acquired a permit to construct a commercial building. *Id.* at 500. However, before he could begin construction, the city passed a zoning ordinance that prohibited the construction of non-residential buildings in the area at issue. *Id.* The defendant—who had already commissioned a survey and developed construction plans for a commercial building—argued that he acquired a vested right because of his "substantial expenditures of time and money." *Id.* The Michigan Supreme Court disagreed, stating that the defendant failed to do any work of "substantial character" and the "preliminary work" of ordering plans and a survey "was not sufficient to create a vested right to erect the building." *Id.* at 500–01.

The Michigan Supreme Court has repeatedly used *Dawley's* "substantial character" test to determine whether a party acquired a vested right in the use of property. *See, e.g.*, *Sandenburgh v. Michigamme Oil Co.*, 228 N.W. 707, 708 (Mich. 1930) (defendant had a vested right to construct a gas station because he purchased materials and began excavation while relying on a valid permit that was later revoked); *Bloomfield Township v. Beardslee*, 84 N.W.2d 537 (Mich. 1957); *Franchise Realty Interstate Corp. v. City of Detroit*, 118 N.W.2d 258 (Mich. 1962); *DeMull v. City of Lowell*, 118 N.W.2d 232 (Mich. 1962); *Expert Treating Steel Co. v. City of Clawson*, 118 N.W.2d 815 (Mich. 1962); *Detroit Edison Co. v. City of Wixom*, 172 N.W.2d 382 (Mich. 1969).

Eventually, the Michigan Supreme Court held that in order to have a vested right in the use of property, a party must have a lawful permit. *Dingeman*, 223 N.W.2d at 691. In *Dingeman*, the plaintiff obtained a lawful permit from the township to build a billboard. *Id.* at 690. But several months later, the township adopted a zoning ordinance that prohibited the construction of billboards. *Id.* When analyzing the plaintiff's vested-right claim, the court acknowledged that the existence of "a lawful permit" was a "crucial fact" considered in the *Dawley* line of cases. *Id.* at 691. The court emphasized that when "a township issues a valid permit to an applicant, that

applicant has every reason and right to rely thereon in his business dealings" and that it "fully supports" analyzing the presence of a valid permit. *Id.* The court ultimately concluded that the plaintiff's reliance on the valid permit and the "substantial character of the preparatory construction work completed" established a vested right to complete the construction of the billboard. *Id.* at 691–92.

But does a person have a vested right if they rely on a permit or license issued in violation of existing laws? Generally, they do not. *Fass v. City of Highland Park*, 39 N.W.2d 336, 341 (Mich. 1949). In *Fass*, the plaintiffs sought to open a facility to sell both dressed and live poultry. *Id.* at 337. The city issued a building permit, even though there was a zoning ordinance in effect that prohibited the sale of live poultry on the premises. *Id.* at 339. For three consecutive years, the city also issued plaintiffs a license to sell live poultry on their property. *Id.* at 337. When plaintiffs sought to renew this license for a fourth consecutive year, the city declined, citing the zoning ordinance. *Id.* The plaintiffs sought to estop the city from enforcing the ordinance against them. *Id.* But the court denied the plaintiffs' estoppel claim, explaining that the permit had no "legal status" because it was issued in contravention of existing zoning ordinances. *Id.* As a result, the permit had no legal authority and "plaintiffs acquired no vested right to use their property for a purpose forbidden by law." *Id.* at 341; *see also Cook v. Bandeen*, 96 N.W.2d 743, 746 (Mich. 1959) (no vested right to expand trailer park because the permit was issued based on an erroneous interpretation of zoning ordinances).

This general rule laid out in *Fass* has a narrow exception. Under certain circumstances, a governing body may be estopped from enforcing a zoning regulation when it had issued a permit that was later found to be in violation of a zoning law. *Pittsfield Township v. Malcolm*, 134 N.W.2d 166, 172–73 (Mich. 1965). In *Pittsfield*, the defendants obtained a building permit to construct and

operate an animal kennel. *Id.* at 167. After operating the kennel for a little over ten months, the township sought to enjoin the defendants from operating the kennel because the zoning ordinances—which were in effect when the township issued the building permit—prohibited animal kennels. *Id.* Nevertheless, the court estopped the township from enforcing the ordinance. *Id.* at 172. Given that the defendants had expended a significant amount of money to construct a kennel that was of "otherwise doubtful utility," and the township did not enforce the zoning ordinance until several months after the "construction, occupancy and operation" of the kennel, the court concluded that "equity and good conscience" favored the defendants. *Id.* at 173.

To summarize, under *Dawley* and its progeny, a party obtains a vested right in the use of property if that party relies on a lawful permit and conducts work of substantial character on the property. However, a party does not have a vested right if the permit was issued in violation of local zoning ordinances. And even if the party lacks a vested right, there may be exceptional circumstances in which the governing body should be estopped from enforcing those ordinances based on "equity and good conscience." *Id.*

In this case, the Harts did not have a vested right in constructing their house. The Harts did not rely on a valid permit, as their application did not comply with the zoning ordinances, which require applicants to submit scaled drawings for "[a]ny new construction . . . of a single-family . . . dwelling[.]" Article 17 § 2(B), R. 21-26 at PageID 413. The Zoning Board found that the drawings attached to the Harts' application were missing the location and size of the structures proposed to be built, natural features existing on the site, a proposed method of sewer and sanitary services, and a proposed topography—all of which were required by the zoning ordinances. Lang admitted that he "made a mistake" by overlooking the drawing's deficiencies and issued the permit "[i]n a hurry." Lang Dep., R. 21-25 at PageID 337. Without a valid permit, the Harts did not acquire

a vested right. *See Fass*, 39 N.W.2d at 341. And without a vested right, the Harts do not have a property interest under the Fourteenth Amendment. *Cf. 600 Marshall Ent. Concepts, LLC v. City of Memphis*, 705 F.3d 576, 588 (6th Cir. 2013) (finding that there is no legitimate property interest when a permit was issued erroneously).

The Harts' reliance on *Pittsfield* is misguided. As a threshold matter, *Pittsfield* does not discuss whether the property owners acquired a vested right in the property; it merely stands for the proposition that under exceptional circumstances, principles of equity may allow a city to be estopped from enforcing zoning ordinances. There, defendants constructed a highly specialized animal kennel that could not be adopted to other uses if the township enforced the zoning ordinance. In other words, the defendants would have been permanently deprived of all use of a facility on which they expended substantial resources. By contrast, the Harts were constructing a home while relying on a permit that was issued without a proper evaluation of accurate drawings. The Harts were not deprived of all beneficial use of their property (as in *Pittsfield*). In fact, they now enjoy the full use of their house and property, albeit at some additional cost and inconvenience. Issuing a stop-work order that temporarily halted construction while the Township ensured compliance with existing ordinances did not create circumstances "so exceptional" as to put this case in *Pittsfield*'s ambit. 134 N.W.2d at 172.

In sum, the Harts did not have a valid permit because they failed to include the requisite drawings with their permit application. Without a valid permit, the Harts never had a vested right, and therefore did not have a property interest of which they could not be deprived without due process. Without a protected property interest, the Harts' procedural-due-process claim fails. *See Dodd v. City of Chattanooga, TN*, 846 F.3d 180, 187 (6th Cir. 2017) (holding that plaintiff's

procedural-due-process and takings claim failed because he did not have a protected property interest).

**B.**

*Fifth Amendment Takings.* The Harts second claim is that the Township effectuated a temporary taking when it issued the stop-work order because the order interfered with the Harts' vested right to construct a house on their property pursuant to the permit. Appellant Br. 29–32. The Fifth Amendment's Takings Clause, as incorporated against the states by the Fourteenth Amendment, provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend V. To evaluate a takings claim, we follow a two-tier approach: First, "the court must examine whether the claimant has established a cognizable property interest[,]" and second, if the court finds that a "property interest is implicated," then it "must consider whether a taking occurred." *Coal. for Gov't. Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 481 (6th Cir. 2004) (internal quotation marks omitted).

To determine whether the Harts had a property interest, a court must conduct "a searching inquiry into background principles of the State's law of property and nuisance already place[d] on land ownership" and consider "objective factors, such as the nature of the land use proscribed." *Andrews v. City of Mentor*, 11 F.4th 462, 472 (6th Cir. 2021) (alteration in original) (internal quotation marks and citations omitted). "[T]he deprivation of the right to use property for a particular purpose is not a 'taking' if that right was never a part of the titleholder's bundle of rights to begin with." *Id.* (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027 (1992)). In other words, "no takings claim can proceed without a valid property interest." *Id.* at 469 (citing *Wyatt v. United States*, 271 F.3d 1090, 1097 (Fed. Cir. 2001)).

The Harts' takings claim fails at this threshold inquiry. As explained above, the Harts did not acquire a vested right because their permit was issued in violation of existing zoning ordinances. *See Fass*, 39 N.W.2d at 341. Without a vested right, there was no cognizable property interest for the Township to take. Accordingly, the Harts' takings claim necessarily fails, and we need not determine whether a taking occurred based on the *Penn Central* factors. *Puckett v. Lexington-Fayette Urb. Cnty. Govt.*, 833 F.3d 590, 609–10 (6th Cir. 2016) (holding that the plaintiffs' takings claim was foreclosed because they lacked a property right to a specific cost of living adjustment formula for calculating retirement pensions); *Raceway Park, Inc. v. Ohio*, 356 F.3d 677, 683 (6th Cir. 2004) (stating that "there is no taking if there is no private property in the first place").

The Harts primarily rely on *Kalkman v. City of Village of Douglas*, to advance their takings claim. No. 306051, 2012 WL 4215834 (Mich. Ct. App. Sept. 20, 2012) (per curiam). There, the Michigan Court of Appeals found that the City committed a Fifth Amendment taking when it ordered Kalkman to stop construction of a residential home because he purportedly violated front-yard-setback ordinances. *Id.* at *1, *5. But *Kalkman* is easily distinguishable. Kalkman had a *valid* permit that complied with existing zoning ordinances, and the City issued the order based on an *erroneous* interpretation of its own zoning ordinances. *Id.* at *2–3. Accordingly, Kalkman had a vested property right. *Id.* at *3. By contrast, the Harts never possessed a valid permit, and thus never had a vested property right.

\*     \*     \*

In sum, because the Harts did not have a vested right in the construction of their house, they failed to establish that the Township violated their Fourteenth Amendment right to procedural due process or that it committed a Fifth Amendment taking. *Dodd*, 846 F.3d at 187 (holding that

plaintiff's procedural-due-process and takings claim failed because he did not have a protected property interest). And because the Harts did not establish that the Township violated their constitutional rights, their *Monell* claims cannot succeed. *See 600 Marshall Ent. Concepts*, 705 F.3d at 588.

## IV.

For the foregoing reasons, we **AFFIRM** the district court's judgment.